[Crim. No. 2965.   First Dist., Div. One.   Mar. 29, 1954.]

THE PEOPLE, Respondent, v. JOHN TIPTON et al.,
Appellants.

Sol A. Abrams for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Clayton R. Janssen, Jr., Deputy Attorney General, for Respondent.

PETERS, P. J.—John and Jeanette Tipton were charged and convicted of four separate violations of that portion of section 11714 of the Health and Safety Code which declares that any person "who unlawfully sells, furnishes, administers, gives, or offers . . . any narcotic to a minor, is guilty of a felony punishable by imprisonment in the state prison for not less than five years . . ." In addition, John Tipton was convicted on a separate count of pimping, as that felony was defined in Statutes of 1921, chapter 100, page 96.* John was sentenced to four consecutive terms of imprisonment on the four narcotic counts, it being provided that the sentence for pimping should run concurrently with one of the sentences on the narcotic charges. As to Jeanette, her sentences on counts one and three were made to run concurrently as were those on counts two and four, it being provided that the terms on counts two and four should not commence until the expiration of the terms on counts one and three. Both defendants appeal from the judgment.

The principal witness for the prosecution was Clarice Strange, aged 17, the minor to whom appellants furnished the narcotics. She testified that she lived in a named San

---

*Since 1953 the crime is now defined in section 266h of the Penal Code. The offense here involved occurred before the effective date of that statute. For that reason the definition in the 1921 statute is here applicable. The two definitions, so far as the problem here concerned is involved, are substantially identical.

Francisco hotel in January of 1953. There is some conflict as to how long Clarice stayed at this hotel, and as to the precise dates of her occupancy, but the evidence is undisputed that she occupied the room continuously for at least one week. She testified that she had known the Tiptons, who lived across the street from the hotel in question, before she moved to that hotel; that during all the time she lived there she was practicing prostitution, from which activity she made from $30 to $60 per day; that no one solicited for her; that during all of this period she was using heroin daily which she secured from the Tiptons who were both addicts and sellers; that she had been a heroin user for two and a half years; that she took three to six hypodermic shots of heroin every day; that Jeanette Tipton was also a prostitute; that during all of the period in question she turned over her entire earnings from the prostitution to John Tipton who returned to her three or four dollars daily with which she purchased food; that in return the Tiptons furnished her daily with all of the heroin she needed; that she secured the heroin from both the Tiptons daily in the Tiptons' apartment over a period of several weeks under this arrangement, and took her shots in their presence, they frequently also taking shots with her. She estimated that she received heroin each day that would otherwise have cost her $50. The heroin was furnished to her on more than four separate days.

No heroin was produced at the trial. Clarice, however, testified that it was heroin she received from the Tiptons. She testified, in some detail, how she administered the drug to herself, how she felt if she did not have a shot when needed, and how she felt after administering the drug. A doctor, who qualified as an expert on drug addiction, testified as to the chemical nature of heroin, its effect on individuals, and the usual method employed by addicts in self-administering the drug. Then, in response to a hypothetical question, he stated that it was his opinion from Clarice's testimony that she had been using narcotics, was an addict, and that the drug could have been heroin.

Neither appellant challenges the sufficiency of the evidence on the four narcotic charges, except in connection with the sufficiency of the evidence to prove the corpus delicti. Their basic contention is that their acts in furnishing narcotics to the minor on four consecutive days constituted but one continuing offense and not four separate offenses. Their argu-

ment is that the gist of the four narcotic charges was the contributing to the delinquency of a minor by furnishing her narcotics, and that was but one offense, continuous in nature, which acts cannot be broken up into separate crimes with separate sentences.

■ There is no merit to these arguments. Section 11714 of the Health and Safety Code makes it a felony to furnish narcotics to a minor. The indictment charges that on four separate days appellants furnished narcotics to Clarice, a minor. The evidence supports the charges. Each time heroin was furnished, the act defined in the section was committed and completed. Each time heroin was furnished to her it was, therefore, a complete and separate offense. It is immaterial that the act was committed each time at the same place by the same people. While no case has been called to our attention dealing with this section of the code, there are several cases so holding in analogous situations. In *People* v. *Phillips,* 76 Cal.App.2d 515 [173 P.2d 392], defendant was charged in two counts with the crime of offering a bribe to a prize fighter. The evidence was that on two separate occasions he had offered a bribe to a fighter to induce him to throw a fight. Both times the offer was rejected. Both offers related to the same fight. Conviction of two separate offenses was upheld, it being held that two offenses had been charged and proved. In *People* v. *Rhoades,* 93 Cal.App.2d 448 [209 P.2d 33], and in *People* v. *Von Mullendorf,* 110 Cal.App.2d 286 [242 P.2d 403], it was held that a physician who twice attempted to produce a miscarriage on the same female during the same pregnancy for the same fee was properly convicted of two separate crimes. The reasoning of these cases demonstrates that the furnishing of narcotics on four separate occasions to a minor constituted four separate offenses and was not one continuous offense.

The next contention of appellants is that the corpus delicti was not proved in that no heroin was produced at the trial. It is pointed out that an essential element of the four narcotic charges was proof that the substance furnished the minor was a narcotic, and, it is contended, such proof can only be made by the introduction of the narcotic into evidence and its identification by an expert. The point is without merit. ■ The corpus delicti in any case, including a narcotic case, may be proved by circumstantial evidence. (*People* v. *Corrales,* 34 Cal.2d 426 [210 P.2d 843] ; *People* v. *Ives,* 17 Cal.2d 459 [110 P.2d 408] ; *People* v. *Mehaffey,* 32

Cal.2d 535 [197 P.2d 12].)  ▮  The prosecution need not physically produce the narcotic. It may prove that the substance was a narcotic by the testimony of the user and by the testimony of a doctor that, in his opinion, the substance used was a narcotic. This precise point was so decided in the recent case of *People* v. *Candalaria*, 121 Cal.App.2d 686 [264 P.2d 71]. The evidence here meets all the tests laid down in that case.

▮  It is also urged that the sentences here imposed on the narcotic charges were unconstitutional in that they were cruel and inhuman, for the reason that several of them are made to run consecutively. Section 11714 of the Health and Safety Code fixes a minimum of a five-year sentence for the violation of its provisions. Appellants, as already pointed out, were convicted properly of four separate violations of that section. The sentences of five years for each violation were the sentences prescribed by the Legislature. ▮ The Legislature has the power to determine penalties for criminal acts. (*People* v. *Hess*, 104 Cal.App.2d 642, 686 [234 P.2d 65].)

▮  The trial court possesses the discretion to determine whether the sentences should be consecutive or concurrent. (*People* v. *Van Valkenburg*, 111 Cal.App.2d 337 [244 P.2d 750].)  ▮  No abuse of discretion here appears. For these reasons the sentences here imposed were not cruel or inhuman in the constitutional sense.

Appellant John Tipton contends that the evidence is insufficient to support his conviction of pimping. He contends that the evidence simply shows that Clarice gave him and his wife her earnings from prostitution and that they, in return, furnished her with narcotics which were worth as much or more than her income from prostitution. Thus, so it is claimed, the evidence shows that Clarice was simply using her earnings to purchase narcotics. It is contended that this does not support a conviction of pimping against the narcotic seller.

Statutes of 1921, chapter 100, page 96, provides, in part: "Any male person who, knowing a female person to be a prostitute, shall live or derive support or maintenance in whole or in part, from the earnings or proceeds of the prostitution of such prostitute . . . shall be guilty of a felony, to wit: pimping . . ." ▮ Under this statute the prosecution must prove that the accused is a male; that the female is a prostitute; that the defendant knows that fact; that the prostitute has made some earnings from her business, and that the defendant

has derived his support in whole or in part from such earnings knowing that the money given him was the proceeds from such earnings. (See discussion and cases cited 20 Cal.Jur. p. 391, § 8.) The prosecution proved all of these elements in the instant case. This appellant knew that Clarice was a prostitute. He arranged with her that if she would turn over her earnings to him from her prostitution he would furnish her with narcotics. He knew that the money he received from Clarice had been earned by her as a prostitute. ■ It is reasonable to assume that the furnishing of narcotics to Clarice was intended to induce her, and obviously would have the effect of inducing her, as an addict, to continue in prostitution in order to make the earnings with which to buy the heroin. We do not have to decide whether one who sells a prostitute food or clothing or other necessity knowing that she is paying him with the proceeds of prostitution is guilty of the offense defined by the section. That is not the instant case. Here, under the facts, the furnishing of the heroin had the purpose, intent and effect of inducing Clarice to engage in prostitution in order that appellant could make a profit therefrom. The statute clearly intended to make such inducement and participation a crime.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.