[No. 632-2.    Division Two.    November 2, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT LOUIS
HUTTON, *Appellant.*

*Lembhard G. Howell* (of *Howell & Watson*) and *Edward E. Gibson,* for appellant.

*Smith Troy, Prosecuting Attorney,* and *Ed Schaller, Jr., Deputy,* for respondent.

PETRIE, C.J.—Defendant, Robert Louis Hutton, appeals from a judgment and sentence entered subsequent to a jury verdict of guilty as to each of three counts in an information filed against him. Count 1 charged that on December 23, 1969 he distributed an amphetamine to another. Count 2 charged that on January 18, 1970 he had an amphetamine in his possession. Count 3 charged him with having committed the crime of second-degree assault on January 18, 1970 by assaulting the town marshal of the town of Rainier, Washington "with a weapon or instrument likely to produce bodily harm, to-wit: a garden rake, and further did prevent and resist the lawful apprehension and detention of himself."

The defendant contends (1) with respect to counts 1 and 2, that the state has failed to prove the corpus delicti because there is insufficient evidence in the record to establish the substance allegedly distributed or possessed was, in fact, an amphetamine; and (2) with respect to count 3, that there is insufficient evidence in the record to establish the arresting officers had probable cause to arrest him without a warrant. We agree—and conclude, therefore, that this cause should be remanded with instruction to dismiss all three counts of the information.

■ ■ We note, preliminarily, that a challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the challenge is made and all

inferences that can reasonably be drawn from that evidence, and requires that the evidence be interpreted most strongly against the challenger and in the light most favorable to the opposing party. *State v. Etheridge*, 74 Wn.2d 102, 443 P.2d 536 (1968). On the other hand, the existence of a fact cannot rest upon guess, speculation or conjecture. *State v. Carter*, 5 Wn. App. 802, 490 P.2d 1346 (1971). In order to support a determination of the existence of a fact, evidence thereof must be substantial, *i.e.*, it must attain that character which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. *State v. Zamora*, 6 Wn. App. 130, 491 P.2d 1342 (1971). Whether or not there is substantial evidence is a question of law for the court. *State v. Zamora, supra.*

In order to establish the corpus delicti in counts 1 and 2 the state presented two witnesses: One, an informant to whom the alleged contraband had been distributed; the other, a psychiatrist who had no personal knowledge of any of the circumstances or events involved in counts 1 and 2.

Considering the testimony in the light most favorable to the state, Peggy Slaughterback, the informant, testified that on December 23, 1969, the defendant gave her—and she ingested into her system both by swallowing and sniffing —a wine bottle cap full of a white, flaky substance which had been in a plastic bag; that she initially became tired for about 10 to 15 minutes and thereafter experienced a "tingling feeling"; that she did "not really" know what the substance was, only that she had "heard" it was speed. When asked to describe the tingling sensation, she said "Oh, all over, felt light. My head started tingling." This sensation, she said, lasted 12 to 15 hours. Further, she testified, on January 18, 1970 she met the defendant, asked him "for some speed", and he gave her a substance which had been in a plastic bag. She ate a quantity of the substance which she described as "Not very much, just about a bottom of a beer capful" [*sic*]. After she ate the substance she got "a little high" and experienced feelings similar to what

she had experienced on December 23, "but not as bad." She believed she was taking speed.

Dr. James Bremner, a board certified psychiatrist, testified that an amphetamine has a distinctive stimulant effect upon the nervous system; that a typical effect includes stimulation where dosage is not excessive; that when taken in excessive dosage, which occurs in cases of illicit usage, it causes an extreme state of excitation, restlessness, cardiac palpitation, inability to relax, rest or sleep over long periods of time, thus leading to exhaustion; and that after-effects include depression, even suicidal depression. Physical appearance of amphetamine in its raw state, he testified, can be a white, powder form. A common term for amphetamines, he said, is "speed." He had never examined Peggy Slaughterback and does not know of his own knowledge whether or not she had any drugs. He was never asked to express an opinion—indeed, we have no way of knowing whether or not he had an opinion—as to whether or not the substance which she allegedly received from the defendant on either December 23, 1969 or January 18, 1970, was an amphetamine. By way of a somewhat negative opinion he did state, however, that an average person who ingested a wine bottle cap full of caffeine would experience a stimulant effect for a few hours, but the stimulant effect would not be extreme nor would it include a tingling sensation.

In our opinion, the foregoing recital of the testimony, most favorable to the state, together with any reasonable inferences therefrom, falls considerably short of the quantum of proof necessary to permit a jury to consider whether or not to convict as to counts 1 and 2 of the information. Whether or not a given substance is an amphetamine is not within the ordinary ken of a layman. *See* *State v. Hink,* 6 Wn. App. 374, 492 P.2d 1053 (1972). Hence the normal method of proof is through the opinion of an expert who has either examined the substance or who otherwise is presented with a factual foundation upon which to base an opinion. Clearly, in this case, Dr. Bremner, although qualified, was not asked to express any opinion as

to the identity of the substance. Such failure invites a motion to strike. *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970). Miss Slaughterback had no expertise which would in any sense qualify her to express an opinion. *See State v. Emmett*, 77 Wn.2d 520, 463 P.2d 609 (1970). Indeed, she specifically disavowed any expertise in this field.

The fact that Miss Slaughterback *believed* she was taking speed, or that she had *asked* the defendant for speed is not evidence that the substance she received or ingested *was* speed. We have already alluded to her testimony that she "heard" the substance was speed. The probative quality of that testimony is extremely suspect. Indeed, we deem it valueless. The testimony arose during direct examination by the prosecutor. An objection to a question, asking her if she had an opinion as to what she was taking, was sustained by the trial court. A second attempt, which however, followed immediately after the initial, successfully challenged effort, resulted in the following testimony:

Q Do you *know* what the substance was?
A No, not really. I can't say that I did—only from what I heard, and seeing it then.
Q What did you hear?
A That it was speed.

(Italics ours.) Objection to this latter testimony was not specifically reasserted, but it followed immediately after the trial court refused to permit her to express an opinion. The distinction, if there is one, between whether she had an "opinion" and whether she "knew" what the substance was, would appear in this context to be a distinction without a difference. Previously, in her testimony, the trial court had sustained an objection to similar testimony on the basis that it was hearsay evidence. The fact that someone had told her the substance was speed does not in any manner qualify her to testify that it was speed. Her statement was neither the opinion of a qualified expert nor was it a layman's conclusionary statement. *See State v. Wigley*, 5 Wn. App. 465, 488 P.2d 766 (1971); *State v. Zamora, supra*. It should never have been permitted to remain for considera-

tion by the jury. *People v. McLean,* 56 Cal. 2d 660, 365 P.2d 403, 16 Cal. Rptr. 347 (1961). Furthermore, neither the state nor the defendant urge its consideration by this court. Both parties appear to consider it as not having been available for consideration by the jury.

Notwithstanding the failure of the state to produce any "opinion" of an expert that the substance was an amphetamine, the state, in its brief and at oral argument, insists that the totality of the chain of circumstantial evidence leads to the reasonable inference, which the jury could permissibly draw—that the substance allegedly distributed and possessed by the defendant was an amphetamine. In support of this position the state directs our attention to two cases from other jurisdictions. *People v. Robinson,* 14 Ill. 2d 325, 153 N.E.2d 65 (1958); *People v. Tipton,* 124 Cal. App. 2d 213, 268 P.2d 196 (1954). These cases do not support the state's contention. In each case the identity of the drug or poison was established by the use of opinion evidence.

■ There is, of course, ample authority for the proposition that the identity of the drug, in a possession or distribution case, can be established by circumstantial evidence. *People v. Chrisman,* 256 Cal. App. 2d 425, 64 Cal. Rptr. 733 (1967) (and cases cited therein); *People v. Kenny,* 36 App. Div. 2d 477, 320 N.Y.S.2d 972 (1971); *People v. Robinson, supra.* Ordinarily, however, not only prudence but necessity as well would dictate that some expression of opinion through expertise, acquired through education or experience, be expressed to support the identity of the substance possessed or distributed. A rare exception to this rule of necessity is *People v. Nelson,* 82 Ill. App. 2d 236, 225 N.E. 2d 820 (1967). In *Nelson,* the defendant was charged with acquisition of drugs by fraud and deceit. The court held the identity of the drugs (medicinal preparations) had been established, without chemical analysis or other opinion evidence, upon the uncontroverted evidence that the substance purchased by the defendant was manufactured by reputable pharmaceutical companies under accepted standards of

narcotics concentration, packaged and labeled by such companies under statutory requirements indicating kind, quantity and form of narcotic drug contained therein, and distributed by such companies, through normal trade channels, ultimately to the defendant in the original of such containers. We find, in the case at bench, no such chain of circumstantial evidence which would obviate the necessity of some valid expression of opinion as to the identity of the substance possessed or distributed by Mr. Hutton.

■ ■ We consider next the sufficiency of the evidence to support a conviction under count 3 of the information. We note initially that count 3 charges the defendant with having violated both subsection (4) and subsection (6) of RCW 9.11.020[1] Where an offense may be committed by different means, an information may charge in one count all means that are not repugnant to each other. *State v. Parmenter*, 74 Wn.2d 343, 444 P.2d 680 (1968). No repugnancy is suggested in this information. When one count of an information alleges the commission of an offense by more than one means, insufficiency of the evidence to support one of the means is fatal to a verdict of guilty, unless the jury has been instructed that their verdict must be unanimous as to any one of the alternative means charged. *State v. Golladay, supra.* No such instruction was given in the case at bench.

With that preliminary note, we examine the sufficiency of the evidence to support that part of the information which alleged that Mr. Hutton "did prevent and resist the lawful apprehension and detention of himself." The essential element, which the defendant contends is deficient in

[1]RCW 9.11.020 defines second-degree assault, in part, as follows:

"Every person who, under circumstances not amounting to assault in the first degree—

" . . .

"(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm; or

" . . .

"(6) Shall assault another with intent . . . to prevent or resist . . . the lawful apprehension or detention of himself . . .

" . . .

"Shall be guilty of assault in the second degree . . ."

the record, is proof that this apprehension was lawful. The officers who attempted to arrest him did so without the benefit of a warrant of arrest. The key issue, therefore, is whether the officers had probable cause to effect the arrest. Ordinarily, that issue is a constitutional fact decided by the court as a prerequisite inquiry determinative of whether or not a defendant has been deprived of a constitutional right. *State v. Doe,* 6 Wn. App. 978, 497 P.2d 599 (1972). In the instant case, however, where the issue is injected into the trial by reason of the charging part of the information, the factual issue necessarily becomes one for the jury to decide.

The state's evidence attempting to establish the lawfulness of the defendant's arrest centers on the testimony of the then Undersheriff of Thurston County, Tony Sexton. At the direction of Officer Sexton a deputy sheriff and the town marshall of Rainier attempted to arrest Mr. Hutton on January 18, 1970. The probable cause to arrest Mr. Hutton is based upon the knowledge which Mr. Sexton possessed. Our review of the sufficiency of the evidence to support the issue of probable cause is based, therefore, upon examination of testimony which Mr. Sexton presented to the jury. We cannot speculate—any more than could the jury—what additional information, if any, lay hidden in the mind of Mr. Sexton at the time he ordered Mr. Hutton's arrest.

Examining the record in the light most favorable to the state we detect the following fact pattern. Mr. Sexton had a background of law enforcement activity dating back to 1961, coupled with attendance at and certification by several law enforcement educational courses of study, including a course of study at the Federal Bureau of Narcotics and Drugs Training School in Washington, D.C. At the time he testified, he was responsible for processing the bulk of alleged drug and narcotic violations in Thurston County. On January 17, 1970 he issued instructions to Deputy Sheriff William McCluskey and to Town Marshal Glenn Pettit to arrest Robert Hutton on the charge of unlawful distribution of a dangerous drug. He directed the order to arrest

Mr. Hutton on the basis of knowledge conveyed to him by Peggy Slaughterback and also "knowing that Mr. Hutton has a history of this type of activity." He explained that the latter knowledge was based upon "a prior marijuana charge."

Mr. Sexton talked to Miss Slaughterback for "an hour and a half or longer" on January 17, 1970; he took a statement from her, which she signed after it had been transcribed. He had that statement in his possession when he testified, but it was not presented to the court or the jury. In response to the question as to whether or not, at the time he issued the arrest order, he believed that Mr. Hutton had committed the crime of unlawful dispensing of a dangerous drug, he responded, "Yes, I did." We are not particularly enlightened, from the testimony of Miss Slaughterback, what she told Mr. Sexton, except as follows:

Q Did Tony Sexton suggest you attempt to get some stuff off Bob?

A He did mention it.

and:

Q On the 18th now, Peggy, when you saw Bob Hutton, you informed him that Pettit was going to arrest him for drugs or something to that effect?

A Yes. I just said something about, "the heat's on,"

. . .

One of the more recent, definitive definitions of probable cause in this jurisdiction is contained in *State v. Todd*, 78 Wn.2d 362, 365, 474 P.2d 542 (1970) as follows:

In order to be justified in arresting without a warrant, an officer must believe and must have good reason to believe that a person has committed or is about to commit or is in the act of committing a felony. Not only must the officer have a real belief that the person is guilty, but that belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

The standard of probable cause should be given a non-technical application, *i.e.*, it is to be applied in the light of everyday experience, rather than according to strict legal formulae. *State v. Baxter*, 68 Wn.2d 416, 413 P.2d 638 (1966). Probable cause must, however, be a belief formulated in the mind of the arresting officer based upon facts and circumstances. *State v. Darst*, 65 Wn.2d 808, 399 P.2d 618 (1965).

From the recital and analysis of the testimony set forth above, we are not apprised of one single fact which Miss Slaughterback presented to Mr. Sexton which would assist him in formulating a belief that probable cause existed to arrest this defendant. Certainly, the knowledge that Hutton had previously been subjected to a marijuana charge in the past is insufficient to form the basis for ordering his arrest on January 17, 1970 for unlawful distribution of a dangerous drug. As a result, the jury was left to speculate entirely as to what information Mr. Sexton had before him on January 17, 1970. The state's burden is more stringent than that. We must conclude that the record reveals an insufficiency of evidence to support an essential element of the crime with which the defendant was charged. In view of this conclusion, and in view of the trial court's failure to instruct the jury that their verdict must be unanimous as to either alternative means of committing the crime of second-degree assault, the jury's verdict must be reversed as to count 3 of the information. *State v. Golladay, supra.*

Reversed and remanded with instructions to dismiss all three counts of the information.

PEARSON and ARMSTRONG, JJ., concur.