**Curtis Alan CORY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. M–75–124.**

Court of Criminal Appeals of Oklahoma.

Nov. 25, 1975.

Rick Chew, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant Curtis Alan Cory, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Kingfisher County, Case No. CRM–74–178 for the offense of Possession of Marihuana in violation of 63 O.S.1971, § 2–402(B–2). His punishment was fixed by the jury at a term of ten (10) months in the county jail, and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the facts were that on June 14, 1974, Jack Witt, an Oklahoma State Game Ranger, was patrolling in Kingfisher County, three miles north and seven miles west of Dover, when he came upon a vehicle parked on a county road. Observing tracks leading from the vehicle into a river bottom, Ranger Witt radioed Ranger Fred Sanford and requested assistance in the investigation of these tracks.

Ranger Sanford joined Ranger Witt at the scene and they proceeded to follow tracks leading away from the abandoned car, down along the river bottom into a swampy area about 400 yards from the road. Ranger Witt testified that it was at this time that he and Ranger Sanford first spotted the defendant. Two individuals had stepped out of the trees some distance from the two rangers, but Ranger Witt was able to observe the men through his binoculars and noted that the defendant was wearing a camouflaged hunting vest and carrying a .22 rifle. As the two rangers approached, the defendant and his companion stepped behind a small tree where the defendant took the vest off and gave it to his companion. The companion took the vest and began to walk away in the opposite direction. The defendant trotted toward the rangers, asking what they wanted. The two rangers called for the defendant's companion to stop, but he continued to move in the opposite direction until they repeated their demand, at which time he complied and returned to a spot where the other three men were standing.

Ranger Witt asked the defendant for his hunting license and the defendant could not produce it. Ranger Witt then checked the hunting vest to determine if any type of game was concealed therein and in the process of investigating the vest he found four plastic zip lock bags containing what he believed to be marihuana. The rangers then attempted to follow the tracks of the defendant and his companion on the theory that the tracks might lead them back to the source of the marihuana. This venture was not immediately successful so the rangers took their two captives back to the location where the cars were parked and radioed for assistance from the sheriff's department. Sheriff Coye Barker arrived on the scene and the defendant was placed under arrest and advised of his rights. The entire party retraced the route of the two captives back along the river bottom and into a wooded, brushy area where they

found what they believed to be three plots of marihuana, one of which had been recently harvested.

Sheriff Barker testified that he was able to identify marihuana because of previous police training on the subject and experience with the substance in the course of police investigations. He further testified that he had given lectures on marihuana identification and had been previously declared an expert witness in trials for the purpose of identifying marihuana. Sheriff Barker confiscated the plastic bags and the hunting vest at the scene and stored them until the day of the trial.

Ranger Witt identified a camouflaged hunting vest in court as the vest worn by the defendant when he first observed him through binoculars on the day of the arrest, and he also identified four plastic zip lock bags as the ones taken from the vest after he had asked the defendant for his hunting license. Ranger Witt further testified that he had put the bags back into the vest and had handed it to Sheriff Coye Barker on the day of the arrest. The vest was introduced into evidence as State's Exhibit No. 1 and the four bags were introduced together as State's Exhibit No. 2. At the completion of the State's case the defendant demurred to the evidence. The demurrer was overruled and the case went to the jury.

■ The defendant's first assignment of error is that the State did not prove beyond a reasonable doubt the identity of the alleged marihuana. We cannot agree. Sheriff Coye Lee Barker was allowed to testify without objection:

"A. I asked him to go back and show me where he first started. This is where the game ranger first saw him. We went to that spot and when we got to that spot we trailed it back on farther east which led to the patches.

Q. And the patches of what?

A. Marijuana.

Q. All right. Did you ascertain that some marijuana had been removed from one of the patches?

A. Yes.

Q. You identified that as marijuana, did you not?

A. Yes.

Q. And what happened to those bags?

A. I took the bags, locked them up. Marked them and locked them up." [Tr. 31]

After the prosecutor had established a chain of custody of the bags up to the date of the trial, he attempted to elicit from the Sheriff another identification of the green leafy substance in the four plastic bags:

"Q. And is there any question whether that is marijuana or not?

MR. TABOR: I object to that. He hasn't been qualified as an expert." [Tr. 34]

Following this objection, Sheriff Barker testified that he had made a study of the matter of marihuana; that he had given many lectures on the subject and had made numerous investigations involving marihuana. Sheriff Barker went on to describe the peculiar characteristics of the marihuana plant, using a drawing board to illustrate the appearance of the leaves and stems and he testified, over objection, that there was no other plant that he knew of that had those kind of leaves. He further stated that he had learned how to identify marihuana at the Southwestern Institute for Police Training. At this point the court interrupted to state, "Just as to qualifications to answer as an expert, defense may cross-examine at this time."

On cross-examination Sheriff Barker testified that he had taken botany in high school and had been studying botany-related materials since 1969 and was unaware of any other plants which had exactly the same appearance as marihuana. He responded that he was aware that a chemical and microscopic analysis was one method

of identifying marihuana, but that he had made his examination by removing some of the substance from the plastic bags and examining it. He acknowledged that marihuana had a very characteristic odor, but stated that he did not burn any of the substance he was seeking to identify.

Redirect examination consisted of the following exchange:

"BY MR. PRIEBE:

Q. You can identify that is nothing but marijuana in that sack?

A. Yes.

MR. PRIEBE: That is all.

THE COURT: You may cross examine as to other matters." [Tr. 42]

On recross examination, defense counsel specifically requested permission to ask one further question on Sheriff Barker's qualifications to testify as to the identity of the alleged marihuana and established that the Sheriff had taken both basic and advanced courses in law enforcement techniques, the last of which he completed in Enid in 1973, and had previously testified as an expert witness in other trials.

On redirect examination the Sheriff testified that he knew of no other weed that someone would be collecting, and the prosecution concluded:

"Q. You are positive and conclusive that those bags contain marijuana?

A. Right. It's easier to identify when it is fresh but you can still identify it even in here now." [Tr. 46]

The court overruled a demurrer to the evidence and later in the proceedings the court distributed the proposed instructions to both attorneys, and at page 50 of the transcript we find the following:

"THE COURT: During the recess copies of the proposed instructions were prepared. I'd like to discuss those with counsel.

MR. PRIEBE: I have no objection to them.

MR. TABOR: I have none, Your Honor. You may want to delete the one on the expert testimony since my witness was not able to be here. But outside of that I have no objections to them." [Emphasis added]

Instruction No. 4, as submitted to the jury, reads verbatim:

"There has been introduced the testimony of a witness who purports to be skilled in his respective line of endeavor. Such witnesses are known in law as expert witnesses. An expert witness is one who is skilled in any certain art, business or profession, possessed of peculiar knowledge acquired by study, observation and practice. You are instructed that you may consider the testimony of such an expert witness, and give it such weight and value as you think it should have, but the weight and value to be given to that testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying as an expert, or to give controlling effect to the opinion of an expert, for the testimony of an expert, like that of any other witness, is to be received by you and given such weight and value as you deem it is entitled to receive."

In *Davenport v. State,* Okl.Cr., 510 P.2d 988 (1973), this Court squarely faced the question of whether identification of marihuana by police officers on the basis of expertise gained through training and experience was sufficient evidence to take the question of identity to the jury. In that case two officers entered a house pursuant to a search warrant and observed a clear plastic baggy containing a green leafy substance. A further search of the premises revealed a white stationery envelope filled with a green leafy substance, two handrolled cigarettes containing a green leafy substance and two pipes containing a burned green leafy residue. At the trial the officers identified the substance discovered in the search as marihuana. The defendant was convicted for Illegal Operation of a Police Radio While in the Commission of a Crime, to-wit: Illegal

Possession of Marijuana, and one of the defendant's contentions was that there was not sufficient evidence to identify the green leafy substance as marihuana. There we held:

"Furthermore, the evidence of the State was sufficient to prove that the substances found in defendant's house were marijuana. The State introduced testimony from the arresting officers as to their specialized knowledge, acquired through study and practice, in the field of narcotics. The arresting officers were of the opinion that the substances found in defendant's house were marijuana. The weight and credibility of such testimony is a question for determination by the jury. See *Harvell v. State,* Okl.Cr., 395 P.2d 331 (1964)."

*Davenport v. State,* supra, is squarely on point with the instant case and we deem it to be controlling. The Sheriff stated that on the basis of his specialized knowledge and a visual inspection of the substance found in the plastic bags within the hunting vest, it was his opinion that the substance was marihuana. The weight and credibility of such testimony is a question for determination by the jury.

Other states have reached the same result. In Ohio in *State v. Maupin,* 42 Ohio St.2d 473, 330 N.E.2d 708 (1975), the Supreme Court held:

"Marijuana, not being an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance, it is not error to permit officers who have had experience * * * searching for and obtaining marijuana to testify that a certain substance is marijuana; and other police officers have also been held qualified so to testify."

The Texas case of *Miller v. State,* 168 Tex.Cr.R. 570, 330 S.W.2d 466 (1959) is directly on point. There the defendant was convicted of the offense of unlawfully possessing a narcotic drug on the strength of the testimony of a police officer that the substance contained in defendant's fruit jar was marihuana. At the trial the defendant called as a witness, a chemist who testified that a visual examination of a substance was insufficient to determine whether it was marihuana and that the proper test was by chemical analysis. On appeal of the conviction in a probation revocation proceeding, the Court of Criminal Appeals of Texas held:

"Before expressing his opinion that the substance which he observed in the jar was marijuana the officer testified that he had been with the Narcotics Bureau of the Dallas Police Department for eighteen months and that he was acquainted with and had seen much marijuana and could recognize marijuana when he saw it. The officer's testimony was sufficient to show his qualifications to testify as an expert and the opinion expressed by him was sufficient to show that appellant did possess marijuana."

For all of the above and foregoing reasons, we find defendant's first assignment of error to be without merit.

Defendant's second assignment of error is that the State failed to prove beyond a reasonable doubt that the defendant either physically or constructively possessed the alleged marihuana. The defendant cites *Brown v. State,* Okl.Cr., 481 P.2d 475 (1971) in support of his contention that the evidence in the instant case will not support a possession conviction. The Syllabus in the *Brown* opinion contains an accurate and concise statement of the rules of law applicable to a fact situation such as the one we are confronted with in our present case:

"1. To convict for unlawful possession of marihuana it is necessary to prove that the accused knew of the presence of the marihuana and that the same was under his control and dominion.

2. Possession may be proved by circumstantial evidence, but a conviction on circumstantial evidence cannot be sustained if the proof does not exclude every other reasonable hypothesis except that of guilt; and proof amounting only to a strong suspicion or mere probability is insufficient.

3. Where a person is present in premises where marihuana is found, but does not have exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge of the presence of marihuana and had control of it unless there are additional independent factors showing his knowledge and control. * * *"

In *Brown v. State*, supra, four grams of marihuana were found during a search of a garage apartment. The defendant was convicted of possession on the basis of evidence establishing his presence in the apartment on the morning before the search and his return while the search was in progress. The evidence also established that the defendant did not have exclusive use or possession of the apartment, but that the apartment door was always unlocked and the premises were visited by several persons at various times. In reversing defendant's conviction we held that there must be an additional independent factor in addition to the presence of marihuana to indicate the defendant's knowledge of its presence and his control of it.

In *Lamer v. State*, Okl.Cr., 508 P.2d 665 (1973), the evidence indicated that the defendant had occupied a room at the Petite Motel; had later left the first room and had registered at the Tower Motel where he was observed dropping an article on the floor of a phone booth after he had spotted a police patrol car. The article which had been dropped in the phone booth turned out to be a plastic bag containing marihuana. Marihuana was also discovered in the defendant's coat pockets and in defendant's room at the Petite Motel. Defendant denied knowledge of any of the marihuana but in affirming his conviction we applied the *Brown* test and held that defendant's knowledge of the presence of marihuana could not be inferred by his mere presence in the phone booth where the plastic bag of marihuana was later found, but that the fact that he was observed dropping something on the floor of the phone booth coupled with the fact that marihuana was also found in his coat pocket and former motel room, added up to the requisite additional independent factors which showed his knowledge and control.

Defendant urges that a fact situation even closer to our present case occurred in *Staples v. State*, Okl.Cr., 528 P.2d 1131 (1974) where we reversed the defendant's conviction for possession analyzing the facts as follows:

"In the instant case the evidence showed that the defendant was neither the owner nor the operator of the vehicle; there was no evidence direct or otherwise that the vehicle was under his control. The only evidence of his contact with the grocery sack containing the baggie of marijuana was that, upon inquiry by the police officer, the defendant held it out for the officer's inspection. There is no evidence that he was under the influence of marijuana at the time of his arrest; that he had marijuana on his person, or that his conduct preceding or following his arrest was in some way suspicious or incriminating. There is, in short, a total absence of 'additional independent factors' from which it may be fairly inferred that he knew of the presence of the marijuana or its location in the vehicle. The evidence shows only that Staples was a passenger in the vehicle sitting close to the concealed drug. Was then the jury warranted in deducing from such evidence inferences which excluded every reasonable hypothesis but that of guilt? We think not."

The defendant asserts that the *Staples* case is so nearly similar on its facts to the present case that it should be controlling on the issue of proof of possession by circumstantial evidence. The similarity does

not extend to one important passage of Ranger Witt's testimony when he describes what happened after the Sheriff arrived on the scene, appearing at page 7 of the transcript:

"A. We backtracked the individuals back down the fence line, found where they crossed the fence and went into a wooded, brushy area. It is an old oxbow type area and where they crossed the fence there was a plot of marijuana growing. It was about the size of a hood of a pickup.

Under further investigation, we found two more plots growing within fifty yards of each other, all approximately the same size plots, but containing different sized plants.

In one of the plots that had been heavily picked and reduced, there were tracks that matched the shoes that the defendant was wearing."

These facts clearly constitute additional independent factors which this Court requires before defendant's knowledge and control may be inferred from the fact that four plastic bags of marihuana were found in a hunting vest which defendant was wearing when first sighted by authorities. The evidence in this case, although circumstantial, is inconsistent with any other reasonable hypothesis but that defendant was guilty beyond a reasonable doubt.

■ The defendant's third assignment of error is that the jury verdict appears to have been given under the influence of passion or prejudice due to remarks made by the trial court in response to a question by the jury foreman. The defendant's contention relates to the jury's apparent confusion over the wording of the last paragraph of Instruction No. 3, which originally read as follows:

"Any person violating this provision shall be deemed guilty of a misdemeanor for the first offense and upon conviction thereof shall be punished by imprisonment in the County Jail for a period of time not more than one (1) year."

This wording prompted a question from the jury:

"THE FOREMAN: Yes, we had one question here, we didn't get it in the instructions but he said any person for the first offense and upon a conviction thereof, shall be convicted for a period of time not more than one year. We didn't know whether this was his first offense or whether it wasn't and we didn't know exactly whether we were supposed to put the time and stuff like that on this or what the deal is. It just says any person violating this. It doesn't say that this person had had prior—

THE COURT: (Interrupting) If the bailiff will bring the instructions to the bench."

At this point the jury was sent back to the jury room and the two attorneys agreed that the problem of interpretation could be resolved if the court would strike the words "for the first offense" from Instruction No. 3 and advise the jury to disregard matters not relating to the charge in the Information. When the jury returned to the courtroom the following exchange took place:

"THE COURT: Let the record show that the defendant is present with his counsel. The State is represented by Mr. Priebe, the Assistant District Attorney, and the jury is present. Members of the jury, the Court regrets the inclusion of the words, 'for the first offense', in Instruction No. 3. The members of the jury will be provided with a copy of the information filed in this case which alleges possession of marijuana and it is this information which was read to you at the beginning of this trial. The jury should not consider the issue a first offense or second offense or matters other than: Is there a violation of the law and the principle part of the law as set out in Instruction No. 3. The members of the jury are not free to make all of these decisions on Instruction No. 3 as I have previously instructed you. You

must consider all of these instructions. But when you receive these instructions back, you will see that relating to the last paragraph of Instruction No. 3, the instruction now reads: 'Any person violating this provision shall be guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment for a period of time not more than one year.' Does that answer the question of the jury?

THE FOREMAN: I don't know whether it does nor not completely. In other words, it still doesn't tell us whether it is his first or second offense. In other words, you are asking us to mark down how much time if he is found guilty. How can we determine that when we don't know whether it is his first, second or third or fourth time he has been caught on this. I'm using this for an example.

THE COURT: Well, the jury is free to consider only the issue of a violation of the law relating to the possession of marijuana. The jury is not free to consider is this a first offense or second offense or a third or any other."

Considering the facts that defense counsel did not object to the trial court's resolution of the foregoing problem and that the jury imposed a sentence of ten (10) months in jail which was well within their discretion under a statute which proscribed a maximum penalty of one year in jail for the offense of which the defendant was convicted, we cannot reach the conclusion that the defendant was prejudiced by the confusion surrounding the instructions. For the reasons stated, we find the defendant's third assignment of error to be without merit.

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly *affirmed.*

BLISS, J., concurs.

BRETT, P. J., dissents.

BRETT, Presiding Judge (dissenting).

I dissent to this decision, because I believe it lessens the requirements for proof beyond a reasonable doubt in this type case. I concede that the Sheriff's identification of marihuana by its morphological characteristics is sufficient to show probable cause for arrest, and it may even be sufficient for purposes of the preliminary examination, but I cannot agree that such identification is sufficient to constitute proof beyond a reasonable doubt at trial.

Likewise, I question the trial court's action in permitting the Sheriff to qualify himself as an expert witness for the purpose of identification of the substance. He maintained the substance in his possession for five months without sending any portion of it to the Oklahoma Bureau of Investigation for chemical analysis, because he considered himself to be an expert. However, his expertise did not include knowledge of the name of the Duquenois chemical test for verification of the substance. That test is commonly utilized for field testing purposes. Also, I do not consider the fact that he testified that he has lectured on the subject of marihuana to be sufficient to qualify him as an expert, as does the majority decision.

No explanation was offered by the Sheriff as to why he did not send the substance to the Oklahoma State Bureau of Investigation for chemical analysis during the five month period. The trial court and this Court are left to presume that because of the Sheriff's belief that marihuana can be identified by its morphological characteristics, such proof is beyond a reasonable doubt. For the purpose of trial, this belief is erroneous. The following is reported in the Wisconsin Law Review, Vol. 3, 1973, in an article entitled, "An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and the Qualifications of Their Analysts:"

"Statistics from the Wisconsin Crime Laboratory confirm that marihuana identification based on gross morphological characteristics is highly prone to error.

During the period March 1970 to March 1971, 1674 samples of marihuana, morphologically identified as such, were submitted to the Wisconsin Crime Laboratory for confirmatory testing. Only 85.6 percent of these were in fact marihuana. Therefore, 14.4 percent, or one in every seven samples, turned in as suspected marihuana were not marihuana. This large percentage of error may be due to the over-zealous enforcement of marihuana laws or the fact that a number of plants that either grow wild in Wisconsin or are sold in florist shops resemble marihuana fairly closely at some stage of their development. In any event, it indicates that macroscopic identification is an unreliable testing technique." [1]

While the Sheriff no doubt possessed more knowledge concerning marihuana than the jury, I believe he still lacked the expertise and skill required to make a determination beyond a reasonable doubt that the substance confiscated was, in fact, marihuana. He also testified that burning marihuana emits a peculiar and distinguishable odor, but he failed to make even that simple test of the substance. Consequently under the facts of this case, it cannot be said that the substance alleged to be marihuana was proved to be marihuana beyond a reasonable doubt.

In an effort to sustain its position that the Sheriff was an expert witness in identifying marihuana, the State relies on two cases from other jurisdictions and one from this Court, but none of those cases are applicable to the facts of the instant case. In the first case cited, *State v. Hutton,* 7 Wash.App. 726, 502 P.2d 1037 (1972), that court stated, "[T]he normal method of proof is through the opinion of an expert who has either examined the substance or who otherwise is presented with a factual foundation upon which to base an opinion. . . ." In the instant case, Sheriff Barker testified only as to his conclusions based upon visual observation. The *Hutton* case was reversed and dismissed as to two counts charged because of a lack of expert proof offered to identify amphetamines. The second citation, *People v. Tipton,* 124 Cal.App.2d 213, 268 P.2d 196 (1954), stands for the proposition that the corpus delicti in any case may be proved by circumstantial evidence. The case from this jurisdiction, *Davenport v. State,* Okl.Cr., 510 P.2d 988 (1973), also cited in the majority opinion, can be distinguished from the instant case because other circumstantial evidence was found at the scene in addition to the marihuana testified to as being present in the house. However, in *Earley v. State,* Okl.Cr., 479 P.2d 594 (1971), this Court determined that the admission of testimony "as to the other pills and tablets, without identification as to their chemical content" was prejudicial to the defendant.

It is evident from even a cursory review of the record before this Court that Sheriff Barker's testimony was nothing more than his conclusions which were not based upon any scientific analysis whatsoever. Such evidence is not sufficient to prove beyond a reasonable doubt the nature of the substance placed into evidence. Unless there is a stipulation between the parties that the substance in question is marihuana, the law should require scientific analysis of the substance by a qualified chemist to constitute proof beyond a reasonable doubt, except where other circumstantial evidence exists sufficient to constitute proof beyond a reasonable doubt that the substance is in fact marihuana.

With reference to the two cases from other jurisdictions cited in the majority decision, the Texas case, *Miller v. State,* supra, and the Ohio case, *State v. Maupin,* supra, neither is persuasive to change the requirements of the law as I perceive it.

Therefore, for the reasons stated, I dissent to this decision.

[1]. Two plants native to Oklahoma often mistaken for marihuana are Vitex and Giant Ragweed. "Autocycnum Cannibium" commonly called Indian Hemp is likewise often thought to be marihuana because of its name.