IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39821-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW D. HYATT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Matthew Hyatt appeals his convictions for third degree rape, fourth degree assault with sexual motivation, and felony harassment.  He argues the State (1) presented insufficient evidence of third degree rape, (2) provided insufficient evidence for the offensive touching and sexual motivation elements of his assault conviction, and (3) failed to prove that his threat to stab the victim placed her in reasonable fear or qualified as a "true threat."  We disagree.

Viewing the evidence in the light most favorable to the State, deferring to the jury's credibility determinations, and independently reviewing the true threat facts, we hold that sufficient evidence supports Hyatt's convictions and affirm.

BACKGROUND

Matthew Hyatt was the head lifeguard at Pullman Aquatic Center, where he worked with R.L., who was a lifeguard and swim instructor, and C.C., another lifeguard and swim instructor and a friend of Hyatt's from high school.

One day in July 2022, R.L. told Hyatt that she and C.S., a friend from high school, planned to go to a club and invited him to join. R.L., then 18, consumed two hard seltzers before going to the club. Because R.L. and C.S. were underage, neither could drink at the club. After the pair finished dinner, Hyatt joined them and ordered himself a couple drinks at the bar. After about 30 minutes, Hyatt, R.L., and C.S. went to Safeway, where Hyatt purchased alcohol for the group.

Hyatt, R.L., and C.S. then went to Hyatt's apartment. R.L. invited C.C. to join them. At Hyatt's apartment the group drank and played card games. C.C. and C.S. thought R.L. seemed drunk, so they helped move her to the couch.

While R.L. was on the couch, Hyatt kissed her, which caught her off guard and caused her to pull her head back. C.C. heard Hyatt ask R.L. twice if he could kiss her, and she responded with an "audible no" both times. When R.L. asked him why he kissed her, Hyatt responded that he was drunk, she was there, and he wanted to kiss someone. R.L. had not expressed any romantic interest in Hyatt that night and thought he was interested in one of her friends. R.L. never told Hyatt that she wanted him to kiss her.

Later that evening, R.L. spilled water on herself and went to the bathroom to clean up. Hyatt offered to help and followed her, despite her saying she did not need help. After cleaning herself with a towel, R.L. tripped and fell outside the bathroom, landing on her back. Hyatt then got on top of her, kissed her, touched her legs and breasts, and put his fingers inside her vagina. R.L. did not give him permission to kiss her or to touch her breasts, and Hyatt never asked. After Hyatt inserted his fingers into her vagina, he asked if it was okay; R.L. said no, and he stopped shortly after. R.L. did not give Hyatt permission before he put his fingers inside her vagina and did not give him any signals that she was interested. She hoped Hyatt would stop and was playing dead. She was worried because Hyatt was her boss, and she did not want work to be awkward or for her to lose shifts because of this. She also knew that Hyatt was interested in becoming a police officer and had been going through police training. She was concerned that he was violating the law.

C.C. and C.S. found Hyatt and R.L. on the floor in the bathroom. C.S. took R.L. to the living room, and C.C. went with Hyatt to Hyatt's bedroom to talk about what happened. Hyatt told C.C. that he touched R.L.'s breasts and inserted his fingers in her vagina. Hyatt later told C.S. that he was not a bad person and did not want to get in trouble.

R.L. and C.S. stayed on the couch for approximately and hour, to sober up before driving home, and then they went to Hyatt's bedroom to tell him goodnight, because R.L.

3

thought it was the nice thing to do. On the drive home, C.S. thought R.L. seemed confused and upset.

The next morning, Hyatt asked R.L. to call him when she woke up. When she did, Hyatt said he wanted them to forget about the incident, pretend it never happened, and to go back to work as normal. He told her not to tell anyone what happened. When she asked what would happen if she did tell people, he said he would kill her. She thought he was joking at first and responded saying that he would not kill her. Hyatt replied, while laughing, that he would kill her by stabbing her with his green knife. At that point R.L. took the threat more seriously.

R.L. became disconcerted, afraid, and did not feel safe. Because of the threat, R.L. began locking her doors, her parents installed a security system, she slept with someone else in her room, her father slept in the living room, and she obtained a protection order. She would wake up in the middle of the night scared that Hyatt was going to kill her or hurt her family because he knew where she lived. Eventually, R.L. contacted the police and went to the hospital for a sexual assault examination.

The police conducted a recorded interview of Hyatt. During the interview, Hyatt admitted that he put his fingers in R.L.'s vagina for "two seconds." Hyatt also confirmed that he threatened to kill R.L. with his green knife if she told anyone, though he said it was a morbid joke.

*Procedural History*

The State charged Hyatt by third amended information with third degree rape of R.L., furnishing liquor to a minor (two counts), fourth degree assault with sexual motivation involving R.L., felony harassment involving R.L., and fourth degree assault with sexual motivation involving C.S.[1]

Hyatt waived a CrR 3.5 hearing and stipulated to the admissibility of statements he made to the police. The court ruled those statements admissible.

The case proceeded to jury trial. The State called R.L., C.S., C.C., law enforcement, and medical personnel, who all testified consistent with the facts above. The State also played the video of Hyatt's police interview for the jury.

Hyatt testified in his defense. He first explained that he was a police intern in Pullman who studied criminal justice and always wanted to become a law enforcement officer. Regarding the night in question, he admitted to providing alcohol to R.L. and C.S. He said that R.L. gave him permission to kiss her while they were on the couch. He claimed that after R.L. tripped in the bathroom, he laid down next to her because he could not pick her up. He asked if they could "make out [some] more," and R.L. said yes. Rep. of Proc. (RP) at 328. They kissed, then he reached under her shirt and he asked if it was okay; she did not say yes but nodded and said "mmhmm." Rep. of Proc. (RP) at 330. He

---

[1] Hyatt was also charged with fourth degree assault with sexual motivation involving C.S., but was acquitted of that charge at trial.

stated that when he reached into her shorts and asked if it was okay, R.L. said she did not know, so he stopped. He denied inserting his fingers into her vagina. Hyatt disputed his earlier statement to police and to C.C. that he put his fingers in her vagina.

Regarding the death threat, Hyatt testified that he was joking when he told R.L. he would stab her with his green knife. He stated he did not intend to threaten her. He testified that R.L. was giggling when she said, "you wouldn't do that." RP at 346-47.

The jury convicted Hyatt of third degree rape of R.L., both counts of furnishing liquor to a minor, fourth degree assault of R.L. with sexual motivation, and felony harassment. He was acquitted of fourth degree assault of C.S.

Hyatt timely appeals.

ANALYSIS

Hyatt contends the State's evidence was insufficient to convict him of third degree rape, fourth degree assault with sexual motivation, and felony harassment.

*A. Legal Standards*

"The sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). This court's review "is highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Due process requires the State to prove every element of a crime beyond a reasonable doubt to secure a conviction. *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d

479 (1987); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. When reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. But, "the existence of a fact cannot rest upon guess, speculation[,] or conjecture." *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972). Importantly, "[c]redibility determinations are for the [jury] and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

If the evidence is insufficient to prove an element of the crime, the remedy is reversal of the conviction and dismissal of the charge with prejudice. *State v. Smith*, 155 Wn.2d 496, 505-06, 120 P.3d 559 (2005).

*B. Third Degree Rape*

"A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse . . . with another person where the victim did not consent to sexual intercourse with the perpetrator." *See* RCW 9A.44.060(1)(a). "'Sexual intercourse' (a) has its ordinary meaning and occurs upon any penetration, however slight, and (b) also means any penetration of the vagina . . . by an object, when committed on one person by another."

7

RCW 9A.44.010(14)(a), (b). "A finger is an object." *State v. Cain*, 28 Wn. App. 462, 465, 624 P.2d 732 (1981). The jury was instructed consistent with these rules.

Initially, we note that Hyatt does not identify which of the elements of third degree rape that he claims the State failed to prove. Instead, he argues broadly that the entire conviction was unsupported by sufficient evidence. His argument appears to focus only on the element of sexual intercourse. ("The testimony of R.L. and Mr. Hyatt was contradictory on whether he put his fingers in her vagina."). As a result, we limit our review to that element alone, as Hyatt fails to adequately provide argument on the other elements.

Viewing the State's evidence as true and in the light most favorable to it, any rational jury could have found the sexual intercourse element proved beyond a reasonable doubt. R.L. testified that Hyatt put his fingers in her vagina. C.C. testified that Hyatt admitted doing so. Hyatt also told police during his interview that he inserted his fingers in R.L.'s vagina.

Hyatt contends that the jury had to resort to speculation, guess, and conjecture to convict him. This argument is unpersuasive for a few reasons. First, the State presented direct testimony that the penetration occurred. Second, Hyatt does not explain why the jury was required to speculate in light of such testimony. Hyatt's argument ultimately boils down to a credibility challenge. But credibility is for the jury, not the appellate court. *Camarillo*, 115 Wn.2d at 71.

### C. Fourth Degree Assault with Sexual Motivation

Hyatt argues the State failed to prove that his kissing R.L. was an offensive touching done for sexual gratification, and therefore his conviction for fourth degree assault with sexual motivation must be reversed. The State responds that, viewing the evidence in the light most favorable to it and taking all reasonable inferences from it, a rational jury could find both that the kiss constituted an assault and that it was committed with sexual motivation. We agree with the State.

Fourth degree assault is defined as an assault "not amounting to assault in the first, second, or third degree, or custodial assault." RCW 9A.36.041(1). "Assault is an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury." *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007).

Here, the jury was instructed as follows:

> An assault is an intentional touching of another person that is harmful or offensive. A touching is offensive if the touching would offend an ordinary person who is not unduly sensitive.
> An act is not an assault, if it is done with the consent of the person alleged to be assaulted.

Clerk's Papers at 198.

When a special allegation of "sexual motivation" is filed, the State must prove beyond a reasonable doubt that "one of the purposes for which the defendant committed

9

the crime was for the purpose of his or her sexual gratification." RCW 9.94A.835, .030(48). The jury was instructed consistent with this definition of sexual motivation.

Hyatt's first argument pertains to the consent element of assault. He contends that the State failed to prove that R.L. did not consent to the kiss on the couch. We disagree.

The evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that R.L. did not consent to the kiss. R.L. testified that Hyatt kissed her on the couch without asking permission, which caught her off guard and caused her to immediately pull her head back. R.L. said she was not interested in kissing Hyatt. C.C. stated that he heard Hyatt ask R.L. twice if he could kiss her, and R.L. responded audibly no both times. Taken as true, this evidence was sufficient to prove that R.L. did not consent to the kiss. That Hyatt testified to the contrary does not change the result. The jury gets to decide credibility. *Camarillo*, 115 Wn.2d at 71.

With regard to the sexual motivation finding, Hyatt argues that the State's evidence was insufficient to prove sexual gratification. He points to his testimony that kissing was common among friends in his age group without a dating relationship, and that it was common to kiss someone when first meeting or at an event. This argument is unpersuasive.

Taking the State's evidence as true, and all reasonable inferences from it, there was sufficient evidence for a rational jury to find beyond a reasonable doubt the kiss was done with sexual motivation. R.L. testified that Hyatt touched her legs and breasts, and

10

inserted his fingers into her vagina shortly after the kiss on the couch. Hyatt also admitted to C.C. and the police that he touched R.L.'s breasts and inserted his fingers into her vagina. Hyatt himself testified that after the kiss on the couch, while in the bathroom, he asked if they could "make out more," then reached under R.L.'s shirt and into her shorts. RP at 328-32. The close temporal connection between the kiss and the subsequent groping and penetration provided the jury a reasonable basis to infer that Hyatt's purpose in initiating the kiss on the couch was for sexual gratification. The jury was not required to accept Hyatt's explanation that kissing was merely casual or social.

### D. Felony Harassment

With regard to the felony harassment conviction, Hyatt argues the State failed to prove that R.L. was in reasonable fear the threat would be carried out and that his statements constituted "true threats." The State responds that, viewing the evidence in the light most favorable to it and applying independent review of the true-threat issue, the evidence was sufficient.

Importantly, neither party acknowledges the recent change in the law governing true threats after the United States Supreme Court's decision in *Counterman v. Colorado*,[2] nor do they analyze the case under that standard. Regardless, applying the

---

[2] 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023).

*Counterman* standard, we conclude that sufficient evidence supports Hyatt's conviction for felony harassment and that Hyatt made a "true threat."

A person is guilty of felony harassment if, without lawful authority, the person knowingly communicates a threat to kill another person, the person making the threat consciously disregards a substantial risk that the communication will be viewed as threatening violence, and the person by words or conduct places "'the person threatened in reasonable fear that the threat will be carried out.'" *State v. Calloway*, 31 Wn. App. 2d 405, 417, 550 P.3d 77 (2024) (quoting RCW 9A.46.020(1)(a), (b), (2)(b)(ii))  To prove harassment, the State must show that the victim subjectively felt fear and that this fear was objectively reasonable.  *State v. E.J.Y.*, 113 Wn. App. 940, 953, 55 P.3d 673 (2002).

In addition to the statutory elements, the First Amendment requires that the threat qualify as a "true threat."  *State v. Kilburn*, 151 Wn.2d 36, 48, 84 P.3d 1215 (2004).  "A true threat is a serious threat, not one said in jest."  *Id.* at 43.  Previously, Washington law defined a true threat objectively, asking whether "'a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm.'" *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998) (alteration in original) (quoting United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir. 1990)).  Under that framework, the inquiry focused on the speaker.  *Kilburn*, 151 Wn.2d at 44.  The mens rea required to prove true threats is "simple negligence."  *Calloway*, 31 Wn.

12

App. 2d at 418.  The jury instruction given for felony harassment in this case was consistent with these rules.

In 2023, however, the United States Supreme Court altered the standard of proof for true threats in *Counterman*.  *See* 600 U.S. at 66.  The Court held that the First Amendment requires that a defendant accused of a crime involving a true threat must have some subjective knowledge of the threatening nature of the statement.  *Id*. at 69.  Specifically, the State must prove recklessness.  *Id*.  Under this standard, the State must prove that "the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence."  *Id*.

Because Hyatt was convicted prior to *Counterman* and his case remains pending on direct review, the constitutional rule announced in *Counterman* applies to his harassment conviction.  *State v. Harris*, 154 Wn. App. 87, 92, 224 P.3d 830 (2010).

Finally, in addition to the above mentioned sufficiency principles, because of the First Amendment implications, this court conducts "a limited independent review of [the] facts crucial to the true threat inquiry" to ensure that a conviction does not rest on protected speech.  *State v. Kohonen*, 192 Wn. App. 567, 577, 370 P.3d 16 (2016); *State v. Locke*, 175 Wn. App. 779, 790, 307 P.3d 771 (2013).

Hyatt first argues that the State failed to prove R.L. was in reasonable fear that his threat would be carried out.  He emphasizes R.L.'s testimony that she initially thought he was joking, that she giggled when he made the statement, and that she told him he would

13

not actually do it.  Hyatt also points to his own testimony that he was laughing and joking and asserts that his words did not amount to a "true threat."  Appellant's Br. at 15-17.  These arguments are unpersuasive.

Viewing the evidence in the light most favorable to the State, the jury had sufficient evidence to conclude R.L. was placed in reasonable fear of Hyatt's threat.  Although R.L. initially giggled, told Hyatt he would not follow through on his threat, and thought he was joking, she also testified that she took his repeated, more specific threat to stab her with his green knife seriously.  The jury was entitled to credit this testimony and reject Hyatt's characterization of the exchange as a joke.  *See Camarillo*, 115 Wn.2d at 71.  Following the threat, R.L. began locking her doors, had her family install a security system, slept with someone else in her room, and obtained a protection order.  She also reported waking at night fearing Hyatt would hurt her or her family.  From these actions, a rational jury could find that R.L. both subjectively felt fear and that her fear was objectively reasonable beyond a reasonable doubt.

Likewise, the evidence was sufficient to prove that Hyatt made a true threat under the *Counterman* standard.  Hyatt made the threat to kill R.L. the day after raping and assaulting her.  In addition, the night of the assault Hyatt had expressed to C.S. that he "didn't want to get in trouble" for what happened.  RP at 235.  Hyatt's threat came in response to R.L.'s query on what he would do if she told someone about Hyatt's actions.  When R.L. expressed doubt that he would actually kill her, Hyatt repeated the threat in

more specific terms, telling her he would stab her with his green knife. A rational jury could conclude beyond a reasonable doubt that Hyatt consciously disregarded the substantial risk that his repeated more specific threat to kill, in that context, would be viewed as threatening violence.

The evidence was sufficient to support the convictions of third degree rape, fourth degree assault with sexual motivation, and felony harassment.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.