STATE of Oklahoma, Appellant,

v.

Steven Ray SHOULTZ, Appellee.

No. O–76–844.

Court of Criminal Appeals of Oklahoma.

May 16, 1977.

Woodrow G. Pendergrass, Dist. Atty., Frank Greer, Asst. Dist. Atty., for appellant.

No appearance for appellee.

## OPINION

BUSSEY, Presiding Judge:

This is an appeal brought by the State of Oklahoma, under the provisions of 22 O.S. 1971, § 1053 ¶ 1, from an Order of the District Court, Ottawa County, sustaining a Motion to Quash the Preliminary Information and Preliminary Hearing in Case No. CRF-76-170, wherein Steven Ray Shoultz, hereinafter referred to as defendant, was charged with Unlawful Delivery of Marijuana.

We do not deem it necessary to recite a detailed statement of evidence adduced at the preliminary hearing; suffice it to say that Randall Green, an employee of the District Attorney's Office and State Bureau of Narcotics, testified that on March 15, 1976, he purchased two "lids" of marijuana from the defendant for $20.00. He identified State's Exhibit No. 1 as the evidence he delivered to Floyd Ingram.

Floyd Ingram testified that he was employed as an investigator for the District Attorney's Office and had approximately sixteen years experience in law enforcement; that he received State's Exhibit No. 1 from Randall Green. He conducted a field test, using a kit, on the green leafy substance contained in State's Exhibit # 1.

He testified that the result of the test was positive for marijuana.

At the conclusion of the preliminary hearing the defendant was bound over to stand trial on the offense of Unlawful Delivery of Marijuana. The trial court subsequently sustained defendant's Motion to Quash, ruling that Investigator Ingram was not qualified to conduct the field test. We must disagree. The record reflects that Investigator Ingram testified as to his qualifications, as follows:

"Q. What's your occupation?

"A. Investigator of the District Attorney, District Thirteen, State of Oklahoma.

"Q. How long have you been employed for the D.A.'s office?

"A. I think about three years.

"Q. How many years of law enforcement have you had?

"A. About sixteen.

"BY MR. DEMIER: I'll stipulate to Mr. Ingram's qualifications, Your Honor.

"BY THE COURT: Very well.

"Q. Mr. Ingram, in the sixteen years that you have been in law enforcement, have you ever had the occasion to use what is known as field kit or zip kit test for drugs?

"A. Yes, sir.

"Q. How many times have you run this particular test, to your knowledge?

"A. This new type test kit we have, in excess of one hundred.

"Q. Would you tell the court how it works?

"A. The kit that we have, has reagents for different types of drugs. One for marijuana where a small sample of the questioned material is taken and put in the small container and a certain amount of drops of reagent A is put into the container with the material and a certain number of drops of reagent B is put into the container with material and the color change is what indicates either negative or positive.

"Q. What color change do you get if it is positive?

"A. Purple.

"Q. What color change do you get if it is parsley or something of that nature?

"A. You can get different colors. A lot of times, it is brown or orange; it will not turn purple or just stay the color of the reagent which is kind of orange or a pinkish color.

"Q. And of course, in running this test over a hundred times have you ever attempted to use anything that would appear to be marijuana that wasn't to determine its accuracy?

"A. I have tested material that tested negative, yes." [Tr. 22–24]

We thus conclude that the expertise of the witness was sufficient to enable him to identify the substance as marijuana especially in view of defendant's offer, to stipulate as to the witness' qualifications as an experienced law enforcement officer. In dealing with a similar question in *Cory v. State,* Okl.Cr., 543 P.2d 565 (1975), we stated:

> "*Davenport v. State* . . . [Okl.Cr., 510 P.2d 988 (1973)], is squarely on point with the instant case and we deem it to be controlling. The Sheriff stated that on the basis of his specialized knowledge and a visual inspection of the substance found in the plastic bags within the hunting vest, it was his opinion that the substance was marihuana. The weight and credibility of such testimony is a question for determination by the jury.

"Other states have reached the same result. In Ohio in *State v. Maupin,* 42 Ohio St.2d 473, 330 N.E.2d 708 (1975), the Supreme Court held:

> 'Marijuana, not being an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance, it is not error to permit officers who have had experience * * *

searching for and obtaining marijuana to testify that a certain substance is marijuana; and other police officers have also been held qualified so to testify.'

"The Texas case of *Miller v. State,* 168 Tex.Cr.R. 570, 330 S.W.2d 466 (1959) is directly on point. There the defendant was convicted of the offense of unlawfully possessing a narcotic drug on the strength of the testimony of a police officer that the substance contained in defendant's fruit jar was marihuana. At the trial the defendant called as a witness, a chemist who testified that a visual examination of a substance was insufficient to determine whether it was marihuana and that the proper test was by chemical analysis. On appeal of the conviction in a probation revocation proceeding, the Court of Criminal Appeals of Texas held:

> 'Before expressing his opinion that the substance which he observed in the jar was marijuana the officer testified that he had been with the Narcotics Bureau of the Dallas Police Department for eighteen months and that he was acquainted with and had seen much marijuana and could recognize marijuana when he saw it. The officer's testimony was sufficient to show his qualifications to testify as an expert and the opinion expressed by him was sufficient to show that appellant did possess marijuana.' "

The Order sustaining the Motion to Quash is hereby vacated and the cause REMANDED to the District Court, Ottawa County for further proceedings.

BLISS, J., concurs.

BRETT, Judge, specially concurs.

While I concur in this decision, I do not give my approval to *Cory v. State,* Okl.Cr., 543 P.2d 565 (1975). However, for the purpose of preliminary examination, I believe the testimony was sufficient to bind over the defendant to stand trial. It is presumed that the proper test of the substance will be shown at trial.