[Crim. No. 34488. Second Dist., Div. Four. Mar. 19, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD ALEX HILL, Defendant and Appellant.

526

COUNSEL

Thomas F. Coleman and Jay M. Kohorn for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JEFFERSON (Bernard), J.*—In count I of an information, defendant was charged with the felony offense of pimping, committed on January 27, 1978, in violation of Penal Code section 266h. It was alleged that the pimping offense had been committed by defendant in knowing that Eugene Griswald was a prostitute and then willfully and unlawfully living and deriving support and maintenance in whole and in part from the earnings and proceeds of Griswald's prostitution. In count II of the information, defendant was charged with the felony offense of pandering, committed on the same date in violation of section 266i of the Penal Code. It was alleged that the offense of pandering was committed by the defendant willfully and unlawfully procuring Eugene Griswald, a male person, for purposes of prostitution.

Defendant entered a plea of not guilty and was tried by a jury. The jury found defendant guilty as charged in both counts of the information. Proceedings were suspended and defendant was granted probation

---

*Assigned by the Chairperson of the Judicial Council.

for three years subject to certain specified terms and conditions including spending the first ninety days in county jail. Defendant has appealed from this judgment of conviction.

Defendant primarily advances two contentions with respect to errors committed below. One contention is that the jury instructions given by the court were inadequate and erroneous and that the trial court had a duty, *sua sponte*, to give adequate instructions. The second contention advanced by defendant is to the effect that he received inadequate assistance of counsel by reason of the failure of defense counsel to request any instructions at all or to object to the erroneous and inadequate instructions given.

## I

### *The Factual Background*

On the date in question, Peter Waack was a member of the Los Angeles Police Department and was working as an undercover vice officer. Upon receiving certain information from Police Officer Samprone, Waack looked at an advertisement in the Advocate newspaper, a publication sold in newspaper vending machines, adult book stores and adult theaters. The advertisement started off with the phrase, "warm, wet and wild," and stated the name "Don" with a phone number listed for a nude photograph. About 7:30 p.m., Waack called the phone number indicated in the advertisement. The phone was answered and Waack stated he wanted to speak to Don. The individual answering the phone said that he was Don. Waack indicated that his name was Peter; Don's response was "[o]h, yes, Tim had told me you were going to call."

Don then asked Waack if he was interested in obtaining a young 15-year-old boy. Waack said he was interested. Don indicated that it was expensive and would cost $300. Waack replied that the price was satisfactory. Waack advised Don that he was staying at the Marriott hotel at the airport and gave Don his room number and telephone number. Don indicated that he had a friend that he would bring to Waack's hotel room that evening.

Around 9 p.m., the phone rang in Waack's room at the Marriott hotel. Waack answered and the caller identified himself as Don. Waack recognized the voice as being the same as the voice in the earlier tele-

phone call to the number contained in the advertisement. Don indicated that he would have to drive to the valley to pick up his friend who was named Gene. Don said that he would bring Gene to Waack's room, but it would be at approximately 11 p.m. About 11 p.m., the phone rang in Waack's room and the voice on the other end of the phone again identified himself as Don and said that he would be there in about 30 minutes.

Shortly thereafter there was a knock on Waack's door. Waack opened the door and the individual at the door stated that he was Don. Waack identified Don as Donald Hill, the defendant. Defendant entered the room and requested the $300. Waack indicated that he would not pay the money until he saw the individual who was to be brought to him, fearing otherwise that it would be a rip-off. Defendant told Waack that his friend Gene knew what he would be required to do and that he knew what to do sexually, but that he did not care for S & M[1] and beatings.

Defendant then left and returned shortly with a young man who was introduced as Gene, whose true name was Eugene Griswald. It was established that Griswald was 17 years of age at the time. Griswald sat in a chair while defendant and Waack went into the bathroom. Waack testified that he again stated his qualms to defendant about being ripped off and that defendant told him not to worry, that Gene knew what to do sexually but simply didn't care for S & M and the beatings. Waack and defendant then returned to the room and, in the presence of Griswald, Waack handed $300 to defendant. Defendant then left, stating that he would be back after one hour to pick up Gene.

After defendant left, Waack asked Griswald what he would do, and Griswald replied that he would engage in an act of oral copulation and an act of sodomy. Griswald then started to get undressed. By prearranged signals, other officers who were in the hotel came forth and arrested defendant in the hallway, and then came into Waack's room and placed Griswald under arrest.

Defendant's defense was to the effect that he had received a telephone call from Tim Stiller before Waack's call, indicating that Stiller had a friend named Peter who was staying at the Marriott hotel and

---

[1]Officer Waack testified that the term "S and M" referred to sadism and masochism.

that defendant should send over someone young-looking that would be used as a model for a photo session and nothing else. Defendant then called Griswald for the purpose of having him be a nude model for photographs to be taken by Peter. Defendant denied telling Waack that Gene knew what to do sexually. Defendant stated that he told Griswald over the phone that he was wanted for a nude photo session and would receive $40 for his services as a model.

Griswald was called as a witness by the prosecutor and testified that defendant had called him to be a model for photographs to be taken in the nude. Officer Samprone testified that, after his arrest, Griswald waived his *Miranda* rights and stated that, when defendant called him and said he had a job for him, it meant that he was to have sex with someone in the hotel room. Officer Samprone also testified that Griswald stated that he was to receive $40 for his services that evening.

## II

### *The Question of Whether the Instructions Were Erroneous and Inadequate*

#### A. *The Instructions Relating to the Offense of Pimping*

The trial judge gave the following instruction defining the offense of pimping: "Every person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of such person's prostitution, or who solicits or receives compensation for soliciting for such person, is guilty of pimping." This instruction was substantially in the language of Penal Code section 266h.[2]

In addition, the court gave an instruction defining the term "prostitution"—used in Penal Code section 266h without explanation—as including "sexual intercourse, sodomy, oral copulation, *or other lewd or dissolute acts between persons* in return for money or other consider-

---

[2]Penal Code section 266h provides: "Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of such person's prostitution, or from money loaned or advanced to or charged against such person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for such person, is guilty of pimping, a felony, and is punishable by imprisonment in the state prison for two, three or four years."

ation." (Italics added.) The trial court also gave instructions defining oral copulation and sodomy. However, no instruction was given defining "other lewd or dissolute acts"—the terms used in the instruction defining "prostitution."

Defendant advances the argument that the instruction defining pimping was misleading. Defendant asserts that the instruction defining the offense of pimping was so ambiguous that the jury may well have considered that the offense of pimping had been committed if the only act committed by defendant was that of soliciting a customer for Griswald without receiving any compensation for such solicitation or attempting to receive any compensation therefor.

Defendant makes reference to the phrase in the instruction that one commits the offense of pimping "who solicits or receives compensation for soliciting for such person" (a prostitute). In *People* v. *Smith* (1955) 44 Cal.2d 77, 79 [279 P.2d 33], the court points out that this phrase is properly interpreted to limit commission of the offense of pimping through solicitation to a "soliciting compensation for soliciting for a prostitute, and not by merely soliciting a customer." Undoubtedly, the jury in the case at bench might well have interpreted the pimping instruction given by the trial court as creating an offense for merely soliciting a customer for Griswald without receiving or expecting compensation.

It was thus error for the trial court not to expand upon the pimping instruction by pointing out that, for soliciting a customer for a prostitute to constitute the offense of pimping, a defendant had to solicit compensation for his service of solicitation. But in the instant case, as in the *Smith* case, the evidence clearly established that defendant received compensation for any solicitation of the customer Waack for Griswald as a prostitute. Hence, the failure of the trial court to further define the offense of pimping constituted a nonprejudicial error.

There was little danger in the case at bench that the jury would consider that the prosecution had established the first alternative of the pimping offense against defendant—that defendant was a person who, with knowledge that Griswald was a prostitute, lived, or derived support from the earnings of Griswald's prostitution. Defendant urges us to accept the view that the trial judge's instruction on this aspect of pimping should have set forth the following specifics: to constitute the offense it

had to be established (1) that Griswald was a prostitute; (2) that defendant knew Griswald was a prostitute; (3) that Griswald made some earnings from prostitution; (4) that defendant derived some financial benefit from Griswald's prostitution; and (5) that defendant knew that the money he received from Waack constituted proceeds from Griswald's earnings from prostitution. This view urged by defendant presents unacceptable reasoning, even though *People* v. *Tipton* (1954) 124 Cal.App.2d 213, 217-218 [268 P.2d 196], set forth these five elements as constituting the first alternative of the pimping statute. The prosecution's evidence in the case at bench obviously was geared to the solicitation alternative of the offense, rather than the deriving-of-earnings alternative.

### B. *The Definition of "Prostitution" as a Part of the Pimping and Pandering Offenses*

Defendant complains of the failure of the trial judge to define what was meant by "other lewd or dissolute acts between persons" as coming within the term "prostitution." By failing to define lewd or dissolute acts between persons, defendant suggests that the jury might well have believed that defendant's solicitation of Officer Waack as a customer for Griswald to pose in the nude for photographs desired by Waack was a solicitation of compensation for acts of "prostitution."

It is to be noted that Penal Code section 266h does not define the word "prostitution." In *People* v. *Fixler* (1976) 56 Cal.App.3d 321 [128 Cal.Rptr. 363], the court defined the term "prostitution" as that term is used in Penal Code section 266i,[3] the pandering offense. But Penal Code section 266i, like Penal Code section 266h, does not define the term "prostitution." The *Fixler* court held that it was construing the term "prostitution" to cover sexual acts such as masturbation, oral copulation and common lewdness for money. In so construing the term "prostitution" as used in Penal Code section 266i, the *Fixler* court relied upon dictionary definitions of "common lewdness of a woman for gain," the "act or practice of engaging in sexual intercourse for money" and the definition of "prostitution" found in Penal Code section 647, subdivision (b), as including "any lewd act between persons for money or other consideration." (*Id.* at p. 325.) This subdivision of section 647 relates to the misdemeanor offense of "disorderly conduct." The *Fixler*

---

[3]Penal Code section 266i defines the crime of pandering to cover a number of situations, including the situation of a person "who: (a) procures another person for the purpose of prostitution;..."

court's interpretation of the term "prostitution" for purposes of Penal Code section 266i was followed in *People* v. *Grow* (1978) 84 Cal. App.3d 310 [148 Cal.Rptr. 648], but only insofar as it adopted the definition given in Penal Code section 647, subdivision (b).

It is significant, however, that, in *People* v. *Schultz* (1965) 238 Cal.App.2d 804 [48 Cal.Rptr. 328], an earlier case, the court had given a more limited definition to the term "prostitution" as used in Penal Code section 266i. The *Schultz* court had limited the term "prostitution" to mean sexual intercourse for money. But even though' neither Penal Code section 266h, defining the felony offense of pimping, nor Penal Code section 266i, which defines the felony offense of pandering, contains any definition of the term "prostitution," used in those sections, we are not required to choose between the different definitions enunciated in *Fixler, Grow*, and *Schultz*.[4] The California Supreme Court recently had occasion to deal with the phrase, "lewd or dissolute conduct," as it is used in Penal Code section 647, subdivision (a). This phrase, which is similar to the phrase "lewd act," used as part of the definition of "prostitution" in Penal Code section 647, subdivision (b), has been attacked as being unconstitutionally vague.

---

[4]In *People* v. *White* (1979) 89 Cal.App.3d 143, 148-149, footnote 2 [152 Cal.Rptr. 312], we set forth the argument that could be made against the interpretations made by *Fixler* and *Grow* in the following language: "But the reliance upon Penal Code section 647, subdivision (b), made by *Fixler* and *Grow* is not altogether persuasive. In 1961, section 647, subdivision (b), was added to the Penal Code to make it an offense of 'disorderly conduct' for a person '[w]ho solicits or who engages in any act of prostitution.' (Stats. 1961, ch. 560, § 2, p. 1672.) Subdivision (b) was amended in 1965, by adding the sentence—'As used in this subdivision, "prostitution" includes any lewd act between persons of the same sex for money or other consideration.' (Stats. 1965, ch. 1959, § 1, p. 4487.) In 1969, subdivision (b) was again amended to delete the words of the second sentence—'of the same sex.' (Stats. 1969, ch. 1319, §§ 1, 2, p. 2657.) [¶] It would appear, therefore, that, before the amendment, the term 'prostitution,' as used in Penal Code section 647, subdivision (b), was intended to refer to that term as generally accepted: a prostitute—being a woman who engages in sexual intercourse for hire and a house of prostitution being a place in which a prostitute plies her trade. (See *Schultz, supra*, 238 Cal.App.2d 804.) It is a generally accepted tenet of statutory construction that the same words used in different statutes that are in pari materia are to be given the same meaning. (*People* v. *Buese* (1963) 220 Cal.App.2d 802 [34 Cal.Rptr. 102]; *People* v. *Courtney* (1959) 176 Cal.App.2d 731 [1 Cal.Rptr. 789].) It is reasonably arguable, therefore, that the term 'prostitution,' used in Penal Code section 266i, was intended by the Legislature to have the same meaning as the same term was intended to have in Penal Code section 647, subdivision (b). The failure of the Legislature to amend Penal Code section 266i while amending Penal Code section 647, subdivision (b), could indicate that the Legislature did not intend to change the meaning of 'prostitution' as used in Penal Code section 266i, to produce the expanded meaning given the term by the amendment to Penal Code section 647, subdivision (b), in the 1965 and 1969 amendments."

In *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], our California high court construed the terms "lewd" conduct and "dissolute" conduct in a well defined, limited manner so as to make the statutory provision satisfy constitutional standards of specificity. Accordingly, the *Pryor* court held that, in Penal Code section 647, subdivision (a), "[t]he terms 'lewd' and 'dissolute' in this section are synonymous, and refer to conduct which involves the touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense,...."[5] (*Id.* at p. 256.)

If the term "prostitution," as used in Penal Code sections 266h (pimping) and 266i (pandering), is to be construed to cover "lewd or dissolute acts between persons in return for money or other consideration," as set forth by the trial court in the instructions given in the case before us, a limitation of the meaning of the terms "lewd" and "dissolute," similar to that made by the *Pryor* court, must be applied to preclude the definition of "prostitution" in Penal Code sections 266h and 266i from being unconstitutionally vague. Accordingly, we construe the term "prostitution," as used in Penal Code sections 266h and 266i, as meaning sexual intercourse between persons for money or other considerations and only those "lewd or dissolute" acts between persons for money or other consideration as set forth in the *Pryor* case.

The crime of disorderly conduct proscribed by Penal Code section 647, subdivision (a), and dealt with in *Pryor*, involves only the "lewd" act of *one person*, committed in a "public place" or a "place open to the public or exposed to public view." But the "disorderly conduct" crime of "prostitution," proscribed by Penal Code section 647, subdivision (b), and which constitutes an essential element of the crimes of pimping and pandering, proscribed by Penal Code sections 266h and 266i, involves an act committed *between* two or more persons.

Application of the *Pryor* holding to the concept of a "lewd" or "dissolute" act as a part of the term "prostitution" involved in Penal Code sections 266h and 266i, compels a decision that, for a "lewd" or "dissolute" act to constitute "prostitution," the genitals, buttocks, or female breast, of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of sexual

---

[5]Penal Code section 647, subdivision (a), provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: [¶] (a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view."

arousal or gratification of the customer or of the prostitute. Such bodily contact between the prostitute and the customer is required to satisfy the constitutional mandate of *Pryor* in light of the provisions of Penal Code section 647, subdivision (b), which define "prostitution" as including "any *lewd* act *between persons* for money or other consideration." (Italics added.)

In the case before us, therefore, it is clear that if the defendant received compensation for soliciting Officer Waack for the acts or conduct of Griswald in posing for nude photographs to be taken by Waack, without Waack coming into contact with the genitals or buttocks of Griswald, such acts or conduct involving Griswald and Waack would not constitute acts of "prostitution," and thus would not constitute a violation of the acts interdicted by Penal Code sections 266h and 266i. It follows, therefore, that in the case before us, if the jury were to believe the defense testimony that defendant informed Waack that he was procuring Griswald and receiving the compensation of $300 for such procuring for the sole purpose of Griswald's permitting Waack to take photographs of Griswald in the nude and Waack so understood this, the jury could not validly convict defendant of a violation of either Penal Code section 266h or Penal Code section 266i.

Although no instruction was given by the trial court with respect to the meaning of "prostitution" other than that it included sexual intercourse, sodomy, oral copulation, or "other lewd or dissolute acts between persons in return for money or other consideration," the issue remains of whether the failure of the trial court to give any such instruction constituted prejudicial error, an issue we shall discuss subsequently herein.

C. *The Question of Whether the Jury Was Misinstructed With Respect to the Requisite Intent for the Crime of Pandering*

Defendant contends that the pandering offense set forth in Penal Code section 266i is a *specific* intent crime and that the trial court gave only a *general* intent instruction relative to that offense. In the case at bench the factual issues in dispute related to the question of what *acts* were committed by defendant to constitute the offense or offenses

charged against him. No issue of defendant's intent was contested. Under such circumstances, the instructions on intent given by the trial court must be considered adequate and not being subject to constituting reversible error.

## III

### *Was There a Duty on the Part of the Court, Sua Sponte, to Instruct on the Defense Theory of the Case?*

Defendant advances the contention that the trial court had a duty, *sua sponte*, to give an instruction to the jury on the defense theory of the case, and that it was error for the trial court not to give such an instruction. The defense presented by defendant was that he had procured Griswald for Officer Waack—not for the purpose of prostitution —but for the purpose of nude modeling for photographs. As we have pointed out herein, nude modeling for photographic purposes, which involves no bodily contact between model and photographer, does not fall within the concept of prostitution. Such conduct by the model cannot be deemed a "lewd" act between persons for money in light of the views of the California Supreme Court set forth in the *Pryor* case.

Defendant relies upon *People v. Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], in which the court set forth the principles for determining when the trial court has a duty to instruct, *sua sponte*, on a theory raised by the defense. "'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*Sedeno, supra*, 10 Cal.3d 703, 715.)

The issue presented is that of an appropriate application of the *Sedeno* obligation to give *sua sponte* instructions on various defense theories. In *People v. Freeman* (1978) 22 Cal.3d 434 [149 Cal.Rptr. 396, 584 P.2d 533], the court rejected the necessity of a *sua sponte* instruction regarding a defendant's defense of *alibi* because an instruction on the facts involving such defense is not necessary for the jury to understand the case. It was the view of *Freeman* that general instructions

regarding reasonable doubt, burden of proof, and other instructions pertaining to the issue of guilt or innocence would be understood by the jury as applying to an alibi defense.

The instructions given in the instant case were similar to those given in *Freeman.* They pertained to matters such as burden of proof, reasonable doubt, and the weighing of credibility of witnesses. But defendant's defense was unlike that of the alibi defense presented in *Freeman.* The defendant's defense sought to establish that the conversations between defendant and Officer Waack and between defendant and Griswald were substantially different from the version of the conversations between these same individuals presented by the prosecution's evidence.

The trial court should have instructed the jury that nude modeling does not constitute an act of prostitution and that an act of procuring a person solely for the purpose of nude modeling does not violate either the pimping or pandering statute. In the absence of such an instruction, the jury might well consider defendant's evidence—even though different from the prosecution's evidence—as itself amounting to the commission of the crimes charged. We hold, therefore, that defendant's defense evidence required the trial court, *sua sponte*, to give such an instruction. Such an instruction was "necessary for the jury's understanding of the case." (*People v. St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].)

Since the errors we have discussed herein are such that it is reasonably probable that a result more favorable to defendant would have been reached had not such errors been made (*People v. Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), we need not consider defendant's claim that he was denied adequate legal assistance of trial counsel under the standard set forth in *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859].)

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

**JEFFERSON (Bernard), J.*—**I am writing this separate concurring opinion because I believe there is a need for a critical analysis of the

*Assigned by the Chairperson of the Judicial Council.

question of appropriate instructions on the element of "intent"—whether the crimes involved are so-called *general-intent* crimes or *specific-intent* crimes—both of which types are present in the offenses of prostitution and pandering, the crimes before us in the instant case.

In the instant case, the instruction which the trial court gave on "intent" was CALJIC No. 3.30 (1975 revision), which is labelled "Concurrence of Act and General Criminal Intent." This instruction provided as follows: "In the crimes charged in Counts 1 and 2 of the information, namely, pimping and pandering, there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

The general-intent instruction is derived from the requirement of Penal Code section 20 which provides that "[i]n *every* crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (Italics added.)

But Penal Code section 20 does not tell us what is the "intent"—the state of mind—which must exist in the perpetrator for particular offenses. As observed by *People* v. *Hernandez* (1964) 61 Cal.2d 529, 532 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], "the casebooks are filled to overflowing with the courts' struggles to determine just what state of mind should be considered relevant in particular contexts." It is the decisional law that has divided the mental element for crimes into the two concepts—general intent and specific intent. The general-intent crime has been designated as the crime in which the mental element involved is simply the *intentional doing* of an act declared to be a crime irrespective of whether the perpetrator knows or does not know that such act, intentionally done, constitutes the commission of a criminal offense.

Contrasted with the general-intent crime is the specific-intent crime—a crime in which the mental state of a *specific intent* is an essential element of the crime—a mental state which involves more than simply the intentional doing of that which the law declares to be a crime.

If a specific-intent crime is charged against a defendant, it is generally considered error to instruct on general intent (such as giving CALJIC No. 3.30) since the jury might well convict a defendant on a finding that he simply intentionally did the act components of the offense—thus possessing the requisite general intent—but without finding that he possessed the specific intent necessary for the crime charged. (See *People* v. *Zerillo* (1950) 36 Cal.2d 222 [223 P.2d 223].)

In the case at bench, the offense of "pandering" (Pen. Code, § 266i), charged against defendant in count II of the information, is a specific-intent crime. The crime of "pandering" requires that a defendant (1) commit the act of procuring another person, and (2) do so with the specific intent in mind—"for the purpose of prostitution."

The instruction generally given when a specific-intent crime is charged is CALJIC No. 3.31. This instruction provides that, in the case of a specific-intent crime charged in the information, "there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed. [¶] The specific intent required is included in the definition of the crime charged."

Whenever a felony involving a specific intent is charged in an information, a specific-intent instruction should be given by the court, *sua sponte*. This *sua sponte* requirement with respect to a specific intent crime is set forth in *People* v. *Ford* (1964) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892]. (See also *People* v. *Turner* (1971) 22 Cal.App.3d 174 [99 Cal.Rptr. 186].)

In my view CALJIC No. 3.31—as a specific intent instruction—is plainly inadequate and should be revised. The beginning reference of the instruction that the instruction applies to a particular offense charged in the information and the concluding sentence that "[t]he specific intent required is included in the definition of the crime charged" (meaning other separate instructions defining the offense charged) leave to speculation and conjecture that the jury will understand the specific intent involved in the definition of the crime charged.

The last sentence of CALJIC No. 3.31 should be tailored *in each case* so that the specific intent required is inserted as a part of the instruction. The desirability of tailoring CALJIC No. 3.31 to set forth in

the instruction itself the *exact* specific intent required for the particular crime involved is well illustrated here where the trial court gave the following instructions defining terms in connection with the pandering offense: the meaning of such terms as "procures," "prostitution," "oral copulation," and "sodomy."[1]

Since Penal Code section 266i—the pandering offense—does *not* contain the word "intent" at all, and, since many other Penal Code sections that define specific-intent crimes do *not* use the word "intent,"[2] it is essential that the jury be told in no uncertain language exactly what constitutes the specific intent as an essential element of the particular offense charged against defendant. This can best be accomplished by including and describing the specific-intent element as a part of CALJIC No. 3.31.

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1980. Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.

---

[1]The instructions given defining various terms were as follows: "Every person who procures another person for the purpose of prostitution or who receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure another person for the purpose of prostitution is guilty of pandering. [¶] As used in this instruction, the term 'procures' means to obtain for another. [¶] In the crime of pandering, it is immaterial whether the person procured consented to or requested the procurement. Nor must a sexual act be completed. The crime is complete once the procurement is effected. [¶] As used in these instructions, the term 'prostitution' includes sexual intercourse, sodomy, oral copulation or other lewd or dissolute acts between persons in return for money or other consideration. [¶] Oral copulation is the act of copulating the mouth of one person with the sexual organ of another person. Copulating means to join or connect. [¶] Sodomy is sexual conduct consisting of contact between the penis of one person and the anus of another person."

[2]See, e.g., Penal Code sections 211 (robbery); 118 (perjury); 182 (conspiracy).