Opinion
BIGELOW, Acting P. J.
Procedural Facts
In a consolidated complaint defendant was charged with two counts of violation of Penal Code section 647, subdivision (b) (solicitation of an act of prostitution); count I alleged the date of that occurrence as September 30, 1978, and in count II the date of the second occurrence was alleged as October 17, 1978. Before commencement of trial, defendant admitted an alleged prior conviction of violation of Penal Code section 647, subdivision (b). The jury was unable to agree on a verdict on count II and a mistrial was declared. Defendant was found guilty on count I and thereafter was sentenced. Defendant appeals from the judgment. We reverse.

*Supp. 5
Facts:

Count I (Sept. 30, 1978):

A police officer testified that while working the vice detail in the Hollywood area he was in plain clothes, driving an unmarked police vehicle; that the defendant was the driver of another vehicle, and that there was another female in that car as a passenger; that about 4:20 a.m. on September 30, 1978, defendant pulled her car up along side of his vehicle and asked him if he was looking for a “date.” There followed, according to the police officer’s testimony, a conversation between the defendant and him that finally evolved to the point that defendant stated the asking price of $75 for an act of sexual intercourse. Defendant and her female companion were arrested for solicitation of an act of prostitution (Pen. Code, § 647, subd. (b)).

Count II (Oct. 17, 1978):

A police officer of Japanese descent, working undercover as a part of the “Asian Task Force,” testified that at 11:15 p.m. on October 17, 1978, he was in plain clothes at the corner of San Pedro and First Streets when a car honked at him and pulled up along side of him; defendant was the passenger and another female was driving; defendant asked him if he would like to engage in sexual acts and touched the officer in his groin area. According to the officer’s testimony, defendant asked him how much money he could give and he stated, in feigned broken English, that money was no problem. He testified that the two women agreed to meet him and a friend in the parking lot of the Otani Hotel, located at 120 South Los Angeles Street in downtown Los Angeles, later that evening. The officer further testified that he met defendant and her female companion as planned and that they went with him to his hotel room in the Otani Hotel; that he had $220 in marked bills; that defendant told him it would cost $100 for her and $100 for her friend, to which he agreed. The officer testified that he told the women to relax, put his jacket containing a wallet with the marked bills on the bed as “bait,” went into the bathroom and took a shower; that while in the bathroom he talked on the telephone to his fellow officers about what had happened; that when he left the bathroom he found the women gone and his money missing from his wallet. He further testified that he found that his fellow officers had arrested the two women outside of his room, and that they brought them back into the room where the officers seated the women on the couch; that later *Supp. 6 the missing marked money was found behind that part of the couch where defendant had been seated. Defendant was arrested for grand theft (Pen. Code, §§ 484, 487), but was later charged only with solicitation of an act of prostitution (Pen. Code, § 647, subd. (b)).

Defendant’s Testimony

Defendant testified that as to the incident in count I (Sept. 30, 1978), the police officer mixed up part of what he claims she said to him with what her female passenger actually said to him and vice versa. She further testified that while she did flirt with the police officer she did not solicit him to engage in sex for money.
As to the incident in count II (Oct. 17, 1978), she testified that she and a different female companion did have a conversation with that police officer, did agree to meet him later at the Otani Hotel, and did go up to his room with her female friend. She did overhear some talk about money between her female friend and the officer. She further testified that when the officer went in to take a shower, she was scared, the two of them left the room and were arrested outside. She said that her female friend secretly told her she had taken the officer’s money. Defendant denied that at any time during this incident she had solicited that police officer to engage in sex for money.

People’s Rebuttal Testimony

Before the . trial began, defendant admitted a prior conviction of solicitation for an act of prostitution (Pen. Code, § 647, subd. (b)) which was alleged in the consolidated complaint. Penal Code section 1025 then provides that the charge of the previous conviction must not be read to the jury, nor alluded to at the trial. At the time defendant admitted the prior conviction, her attorney also objected to the People going into the defendant’s prior record. The trial court responded that the defendant admitting the prior conviction does not preclude the People “from going into the prior convictions, and prior scheme and plan and intent are part of the crimes.” Upon defendant’s further objection to the People bringing in any prior conviction, the trial court responded “He cannot allude to the conviction, only produce testimony concerning what happened underlying that particular event.”
After defendant testified, the defense rested its case. The reporter’s transcript of the oral proceedings contains the following: “(A conference *Supp. 7 was had at the bench to discuss the People’s rebuttal evidence of prior events, which evidence was ruled admissible).” The record on appeal does not reveal the contents nor the details of this conference. From this entire record we hold that the defendant properly objected to the proposed rebuttal testimony by the People, which consisted of the testimony of Police Officer Day. His testimony followed immediately after the conference referred to above.
Police Officer Day testified that on the eighth day of December 1977, he was the police officer in charge of the Hollywood vice detail. He stated that approximately 10 p.m. that evening he was supervising an undercover police vice operation in the Hollywood area near Sunset Boulevard and Mansfield Avenue. He testified that while he and a deputy city attorney were walking on Sunset Boulevard they were met by defendant and another female individual, both of whom were also walking. He further testified to a conversation between defendant and himself which finally resulted in defendant soliciting him for money (at least $20) for an act of sex. He arrested defendant for a violation of Penal Code section 647, subdivision (b).

Error in Admitting Evidence of Prior Uncharged Crime:

This error as a ground of appeal is not raised by appellant in the engrossed statement on appeal. Nevertheless, it does appear to the satisfaction of this court that the record on appeal (which includes the reporter’s transcript of all of the oral proceedings had in the trial court) fairly and fully presents the evidence and other proceedings necessary for a decision thereon. (Cal. Rules of Court, rule 184(b).) As part of the instructions to the jury, the trial court gave a modified version of CALJIC No. 2.50 (Evidence of Other Offenses) (3d ed.) wherein he limited the purpose for which such evidence was received and for which it might be considered by the jury. The jury was instructed, that such evidence could be considered only in determining if it tends to show “one or more of the following:
“(1) the identity of the person who committed the crime, if any, of which the defendant is accused;
“(2) a motive for the commission of the offense;
*Supp. 8 “(3) the existence of the intent which is a necessary element of the crime charged in this case; or,
“(4) a characteristic method, plan or scheme in the commission of the acts in this case.”
The trial court was correct in recognizing the existence of the restrictive rule as to limited admissibility of other crimes evidence. Such evidence is highly prejudicial and the general rule is that it must be excluded. (People v. Thomas (1978) 20 Cal.3d 457, 464 [143 Cal.Rptr. 215, 573 P.2d 433].) The exceptions which allow admissibility of other crimes evidence are few in number and are set forth in the Evidence Code as interpreted by judicial decisions of the appellate courts. These principles are clearly and skillfully set forth in People v. Thompson (1979) 98 Cal.App.3d 467, at pages 473-474 [159 Cal.Rptr. 615] as follows: “Evidence Code section 1101, subdivision (a), provides generally that evidence which establishes a person’s character or trait of character such as evidence that a person has committed crimes or acts of misconduct on certain occasions, is inadmissible when offered to prove his conduct on a specified occasion. However, subdivision (b) of Evidence Code section 1101 provides for the admissibility of character trait evidence in the form of evidence of wrongful acts or crimes committed by a person on various occasions if such evidence is relevant to prove some fact other than such person’s disposition or propensity to commit such acts. The nature of these other facts—as relevant facts to be proved apart from the fact of the person’s propensity or disposition to commit such criminal acts—is not described in subdivision (b) of Evidence Code section 1101 except by way of illustrations ‘such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident’; such a listing is obviously not intended to be all-inclusive.
“Whenever the prosecution seeks to introduce evidence that a defendant in a criminal case committed crimes or other acts of misconduct on occasions other than the occasion of the offense for which defendant is on trial—whether such other crimes be committed with the same or other victims—the serious issue is presented of whether such evidence comes within the framework of Evidence Code section 1101, subdivision (b), as having a relevancy to prove some fact other than defendant’s propensity or disposition to commit such criminal acts.”
We analyze each of the listed purposes separately. In order, purpose number “(1) the identity of the person who committed the crime, if *Supp. 9 any.” When the evidence of the prior crime was offered in rebuttal by the People, the identity of the perpetrator of the crimes charged in counts I and II was not in any way in issue. Each police officer had identified the defendant as the one who spoke the words of solicitation and the defendant herself had already admitted having a conversation with each officer on each of the occasions in question. Identity was simply not then an issue in the case. (People v. Swearington (1977) 71 Cal.App.3d 935, 948 [140 Cal.Rptr. 5]; People v. Haslouer (1978) 79 Cal.App.3d 818, 828 [145 Cal.Rptr. 234].) Even if, arguably, the identity of the speaker of the words that the officers testified defendant spoke was an issue (it was not—it was simply a matter of credibility, i.e., who the jury believed), the rule on the issue of identity is even more restrictive than for other issues. There must be highly distinctive common marks of similarity between the uncharged prior crime and the current charged crime. (People v. Haston (1968) 69 Cal.2d 233, 246-249 [70 Cal.Rptr. 419, 444 P.2d 91]; People v. Thornton (1974) 11 Cal.3d 738, 755-760 [114 Cal.Rptr. 467, 523 P.2d 267].) As will be pointed out later in this opinion, no such highly distinctive common marks of similarity existed between the prior crime and either of the two current charged offenses.
Next we consider “purpose number (2) a motive for the commission of the offense.” Motive is not an element of the crime charged and need not be shown. (CALJIC No. 2.51 (Motive); 1 Witkin, Cal. Crimes, § 54; Fricke & Alarcon, Cal. Criminal Law (11th ed.) pp. 28-29.) By the circumstantial evidence reasoning process, it can be inferred that if a person had a motive to commit a crime, he acted in conformity with that state of mind or emotion and committed the crime. “Other-crimes evidence, admitted to prove a defendant’s motive, is much closer to its use as character trait evidence than when it is offered solely to prove defendant’s intent.” (People v. Gibson (1976) 56 Cal.App.3d 119, 129 [128 Cal.Rptr. 302].) The fact that on the earlier date, defendant solicited Police Officer Day for an act of sex in exchange for money (the uncharged crime) does not tend to prove motive to commit the two current charged crimes other than to establish that defendant was a prostitute by profession. This is strictly character trait evidence and its use as such is prohibited by the general rule of Evidence Code section 1101, subdivision (a) because it is offered to prove defendant’s conduct on a specified occasion (i.e., the two current charges). Whatever slight probative value such evidence has on defendant’s motive is heavily outweighed by its highly prejudicial effect against defendant’s having a fair trial on the two current charges. (I.e., she has a character trait or *Supp. 10 propensity to commit these crimes so she committed these two crimes also.) It should have been ruled inadmissible by the court under Evidence Code section 352. (People v. Gibson, supra, p. 128; People v. Green (1980) 27 Cal.3d 1, 23-26 [164 Cal.Rptr. 1, 609 P.2d 468].)
Our next consideration is purpose number “(3) the existence of the intent which is a necessary element of the crime charged in this case.” It is not the law that defendant’s not guilty plea places his intent in issue so that proof of other offenses is always admissible. “Such evidence is admissible in cases where the proof of defendant’s intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident.” (People v. Kelley (1967) 66 Cal.2d 232, at pp. 242-243 [57 Cal.Rptr. 363, 424 P.2d 947]; People v. Thomas, supra, 20 Cal.3d p. 467 (citing Kelley, supra, and referring to the last sentence with approval.) Also from Kelley, supra, is the following rule limiting the admissibility of other-crimes evidence, at page 243: “It is argued that the other offenses in the instant case were admissible to show that defendant obtained gratification of his passions through oral copulation and to infer therefrom that defendant had the intent required for the commission of the crime charged. If this were the rule, the common plan or design exception would be meaningless. Evidence of any 288a violation could be introduced in any 288a prosecution, and evidence of any other particular offense such as theft or possession of marijuana would be admissible in a prosecution for that offense as showing that defendant had the disposition to commit that particular crime. Such is not and should not become the law. Evidence of other crimes is inadmissible ‘where it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged. .. .’” (Additional italics added.)
Finally, the words that each of the two officers testified that defendant spoke in the two different instances of the two current crimes charged leave no ambiguity as to the specific intent the speaker had at the time she spoke them. Defendant simply denied having spoken the words of solicitation of sex for money in each instance. She did not claim she spoke in jest or with any hidden intent to do anything other than what was implied by the plain meaning of the words used. Therefore, her intent at the time of speaking the words (if the jury believed the officers and disbelieved the defendant) was not placed in issue in this case. (See People v. Norris (1978) 88 Cal.App.3d Supp. 32, 41 [152 Cal.Rptr. 134].)
*Supp. 11 Finally, we consider purpose number “(4) a characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case.” (Italics added.) “Ordinarily, evidence of a common design or plan would bear either on the issue of the defendant’s identity as the perpetrator of the charged offense, or the defendant’s intent to commit that offense.... Or as the matter is sometimes stated, the other offenses ... are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged. [Citations.]” (Italics added; People v. Thomas, supra, 20 Cal.3d, at p. 465.) We have previously discussed and held that neither identity of the perpetrator of the crime, nor intent at the time of speaking the words of solicitation, were issues from the facts of this case. We then turn to the third possible use of common design or plan evidence set forth in Thomas, supra. It is true that “. . . under certain circumstances common design or plan evidence is independently admissible to establish an inference that if the defendant committed the other acts, he committed the act charged. This is exclusive of the issues of intent and identity.” (People v. Haslouer (1978) 79 Cal.App.3d 818, 824 [145 Cal.Rptr. 234].)
Granting the possible admission of such evidence, the similarities must meet the requirements of People v. Thomas, supra, 20 Cal.3d; People v. Thornton, supra, 11 Cal.3d 738; People v. Haston, supra, 69 Cal.2d 233; People v. Cramer (1967) 67 Cal.2d 126, 129-130 [60 Cal.Rptr. 230, 429 P.2d 582] or People v. Kelley, supra, 66 Cal.2d 232. These cases require sufficiently distinctive marks of similarity that distinguish the acts from those facts which are always present in the ordinary run-of-the-mill same type of crime. Haslouer, supra, 79 Cal. App.3d at page 826, for example, uses the words “unique methodology,” “routine—as distinctive as his signature,” “details of striking similarity” and “in a rut.”
An analysis and comparison of the facts of the uncharged prior crime with the two current charges reveals no such high degree of common features to exist. In the uncharged offense defendant was walking on the street with a different female companion when the solicitation occurred. In the two current charges she is alleged to have operated in a car either as the driver or as the passenger, again, in each instance with a different female companion. The words spoken by the defendant, according to the police officers, were not the same in any of the three *Supp. 12 incidents and were not unique in any way from the words spoken in every act of solicitation of prostitution. The time of day varied from 10 p.m. to 11:15 p.m. to 4:20 a.m. The only similarity between the uncharged offense and one of the current charges (count I) is that both occurred in the Hollywood area of the City of Los Angeles. The fact that in each of the three incidents defendant solicited undercover vice officers can hardly be held as a “striking similarity” for the defendant certainly did not know this fact until after her arrest in each case. Even the price of the sex bargained for varied from at least $20 in the uncharged offense to $75 in count I and $100 in count II.
The decided cases have voiced numerous warnings that the danger of prejudice frequently outweighs the probative value derived from admission of prior crimes of the defendant. Such evidence should be received with “extreme caution,” that relevancy and admissibility of the evidence “must be examined with care” and “if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. [Citations]” (People v. Kelley, supra at p. 239 of 66 Cal.2d; People v. Thomas, supra at p. 466 of 20 Cal.3d). We reach the same conclusion as that reached in Thomas, supra: “Therefore, assuming that the trial court in the matter before us exercised its discretion in weighing the prejudicial effects of the evidence against its probative value (Evid. Code, § 352), we must conclude that under the circumstances herein such discretion was abused by the admission of the evidence.”
We further hold that the error constituted reversible error. We note first that the jury was unable to agree on a verdict as to count II and also that the count I incident was a “one-on-one” situation; one police officer’s testimony that the defendant spoke the words of solicitation as against the defendant’s denial that she uttered those words to the officer. We are of the opinion that it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error in admitting the evidence of the uncharged crime of solicitation of prostitution. In short, from an examination of the entire cause, including the evidence, it is our opinion that this error has resulted in a miscarriage of justice. (People v. Watson (1956) 46 Cal.2d 818, 835-837 [299 P.2d 243].)
We reluctantly extend the length of this opinion by dealing with instructional error as well as redefining Penal Code section 647, subdivision (b) to maintain its constitutionality under the mandate of the decisions in Pryor v. Municipal Court (1979) 25 Cal.3d 238 [158 *Supp. 13 Cal.Rptr. 330] and People v. Hill (1980) 103 Cal.App.3d 525 [163 Cal.Rptr. 99].
Jury Instruction Error
The trial court correctly instructed the jury that in the crime charged in the complaint, that is, solicitation for prostitution, there must exist a joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. However, the court then instructed the jury erroneously that the specific intent required was “to communicate to another an offer of sex for money or other consideration.” The trial court then compounded the error in its free wheeling comments to the jury about the purpose of the statute (Pen. Code, § 647, subd. (b)). These remarks told the jury that it didn’t matter what the actual intent of the speaker was at the time the words were spoken. The court told the jury that the act of speaking the words of solicitation with the specific intent to communicate an offer of sex for money constituted the violation of this statute, irrespective of what the real intent was; that is an intent to do something else or that she had never any intent at all to go through with an act of sex for money. The trial court was wrong in this regard on several counts.
The decision in People v. Norris (1978) 88 Cal.App.3d Supp. 32, at p. 38 [152 Cal.Rptr. 134] clearly held that the specific intent in the crime of solicitation of an act of prostitution in violation of Penal Code section 647, subdivision (b) is "to engage in prostitution.” This decision, as are all published and final opinions of this Appellate Department of the Los Angeles Superior Court, is binding on all municipal courts located within the County of Los Angeles. (Pen. Code, §§ 1466 and 1468; Cal. Rules of Court, rule 191 (remittiturs) and rules 976 and 977.) “Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction.... Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.” (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Both the People and the defense requested a jury instruction based on the Norris, supra, 88 Cal.App.3d Supp. 32, decision wherein the specific intent written in the instruction was “to engage in an act of prostitution.” The court refused that instruction. In their brief on appeal the People correctly concede that the trial court committed error in misinstnicting the jury on the specific in *Supp. 14 tent required as an element of the crimes charged, but argue that it is not reversible error for the same reasons set forth in the Norris case. In the Norris case, the trial court mistakenly instructed the jury that this crime only required a general criminal intent and not a specific intent. We held there that since the defendant in that case had testified and denied speaking the words of solicitation at all, his intent at the time of speaking the words was not an issue in the case and, therefore, that this error was not prejudicial and did not result in a miscarriage of justice requiring reversal. In the Norris case, the rest of the trial was error free. Since we are reversing the judgment for possible retrial on other grounds, we need not and do not assess the effect of the errors regarding specific intent set forth above.
For the instruction of the trial court in the possible retrial of these charges, we set forth the following principles of law already decided by higher courts. It is the trial court’s duty, sua sponte, to correctly instruct the jury as to all the elements of the charged offense and this duty applies equally to the specific intent required. (People v. Ford (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]; People v. Sanchez (1950) 35 Cal.2d 522, 528 [219 P.2d 9]; People v. Williams (1980) 102 Cal.App.3d 1018, 1029 [162 Cal.Rptr. 748].) As the trial court instructed on specific intent it correctly ended with the phrase "... and unless such intent so exists that offense is not committed.” (CALJIC No. 3.31.) The importance of instructing the jury correctly on what specific intent is required as an element of the crime need not be further stressed.
Paraphrasing the holding in People v. Hood (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], “When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence” the fact that the defendant intended to do the proscribed act makes that crime a general criminal intent offense. (Italics added.) “When the definition refers to defendant’s intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.” (People v. Hood, supra, p. 457.) (3c) In the Norris case we held that the crime of solicitation of an act of prostitution in violation of Penal Code section 647, subdivision (b) is a specific intent crime under the Hood, supra, definition and by analogy to other crimes of solicitation. The solicitation must be a serious one as opposed to one in jest or one with no intent to carry through by performing the act of prostitution solicited. (See Laurel v. Superior Court (1967) 255 Cal. *Supp. 15 App.2d 292, 298 [63 Cal.Rptr. 114]; People v. Shapiro (1959) 170 Cal.App.2d 468, 478 [338 P.2d 963]; and People v. Phillips (1945) 70 Cal.App.2d 449, 453 [160 P.2d 872], for analogies to other crimes where there must be a specific intent which is defined as a serious request to engage in the crime solicited.)
By contrast, the trial court’s instruction that the specific intent required was “to communicate to another an offer of sex for money or other consideration” would make the crime of solicitation a general intent crime. Under the Hood, supra, 1 Cal.3d 444, definition the act would be accomplished and completed as soon as the words of solicitation were spoken. The “communication” of the offer is only one element of the crime and the trial court’s definition thus leaves out an essential element of the offense. A defendant is not guilty of the offense unless he or she seriously intends to carry through by performing an act of prostitution. A mere speaking of the words of solicitation is not enough for conviction of this offense.
Redefinition of Penal Code Section 647, Subdivision (b)
Penal Code section 647, subdivision (b) reads as follows: “Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:. . .(b) Who solicits or who engages in any act of prostitution. As used in this subdivision, ‘prostitution’ includes any lewd act between persons for money or other consideration.” (Italics added.)
In Pryor v. Municipal Court, supra, 25 Cal.3d 238, our California Supreme Court construed the terms “lewd” conduct and “dissolute” conduct in a well-defined, limited manner so as to make the statutory provision of another subdivision (i.e., (a)) of section 647 satisfy constitutional standards of specificity. That court held that the terms “lewd” and “dissolute” were synonymous as used in section 647, subdivision (a). Pryor redefined those two words as meaning conduct which involves the touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, etc. (see p. 256).
In our case at bench the trial court used the then existing language of section 647, subdivision (b) in defining the elements of the crime as “.. . solicits another to engage in sexual intercourse for money or other consideration or any lewd act between persons of the same or different sexes for money or other consideration, is guilty of a misdemeanor.”
*Supp. 16 In People v. Hill (1980) 103 Cal.App.3d 525 at pages 534 and 535 [163 Cal.Rptr. 99] the court redefined “lewd” as used in the definition of prostitution as that word in turn is used in a prosecution for pimping and pandering (Pen. Code, §§ 266h and 266i). That redefinition of prostitution was “sexual intercourse between persons for money or other consideration” and “lewd” acts, for money or other consideration, confined to conduct where the genitals, buttocks or female breasts of either the prostitute or the customer come in contact with some part of the body of the other for the purpose of sexual arousal or gratification of the customer or of the prostitute. Of course, we accept and adopt that redefinition and apply it to the conduct solicited according to the words spoken as testified to by the police officers as to counts I and II.
In count I, the police officer testified that the defendant said that for $75 “. . .we can make love” which the officer interpreted as meaning an act of sexual intercourse. His interpretation under the circumstances was reasonable and the conduct solicited clearly falls within the new constitutionally specific definition of prostitution.
In count II, the police officer testified that the defendant said “How would you like to make love” and “You know, sucky, sucky” and later said “. . . $100 for me and $100 for her” meaning her female companion. Again, the conduct solicited clearly comes within the redefined definition of prostitution referred to before in this opinion.
No Requirement of Public Place nor of Person Present to Be Offended
The solicitations in Hill all took place either on the telephone or in the undercover officer’s hotel room and the intended acts of sex were intended to. occur in that hotel room. Thus, Hill, by implication holds and we hold that the conduct prohibited by Penal Code section 647, subdivision (b) (prostitution and solicitation of an act of prostitution) can all take place in a private place and still be a violation of this subdivision (b). Stated another way, the act of solicitation can occur in a private place and it may be intended that the sexual acts solicited are to be performed in a private place. There is no limiting language of being in a “public place or in any place open to the public or exposed to public view” in subdivision (b) (prostitution) as there is in subdivision (a) (lewd conduct) of section 647. The Hill case places no requirement of “public place, etc.” in its redefinition of “prostitution.”
*Supp. 17 Nor does Hill require that “the actor know or should know of the presence of persons who may be offended by his conduct” as the Pryor case requires for a violation of subdivision (a) (lewd conduct) of section 647. Solicitation of an act of prostitution and prostitution are entirely different crimes from solicitation of an act of lewd conduct and lewd conduct. The fact that subdivisions (a) and (b) share the one word of “lewd” does not compel the conclusion that the elements or definitions of the crimes must be identical. The one difference regarding “public place, etc.” has already been pointed out. Other significant differences are the words “prostitution” and the phrase “for money or other consideration” both contained in subdivision (b) and not in subdivision (a).
In both counts I and II the solicitation occurred in a public place, i.e., on public streets. In count II the officer’s hotel room (a private place) was apparently intended to be the place where the acts of prostitution solicited were to occur. In count I the evidence does not indicate where such acts were to take place. Both sets of conduct in counts I and II constitute a violation of Penal Code section 647, subdivision (b).

Sufficiency of the Evidence

From the facts recited in this opinion which were established by the evidence, we hold that defendant could be found guilty by a reasonable trier of fact, if the trier of fact believes the police officer and not the defendant. Therefore, even though we reverse the conviction in count I, we do not direct the trial court to enter a judgment of acquittal. (People v. Pierce (1979) 24 Cal.3d 199, 209-210 [155 Cal.Rptr. 657, 595 P.2d 91].)
Disposition
The judgment is reversed.
Fainer, J., concurred.